Fahim Farivar, Esq. (SBN: 252153)
*fahim@farivarlaw.com*
**FARIVAR LAW FIRM, APC**
18345 Ventura Boulevard, Suite No. 518
Tarzana, CA 91356
Telephone: (818) 796-2060
Facsimile: (818) 812-7868

Attorney for Creditor,
Ben Clymer's The Body Shop Perris, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>BEN CLYMER'S THE BODY SHOP PERRIS, INC.<br><br>       Debtor. | Case No. 6:20-BK-14798-SC<br><br>Chapter 11<br><br>**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY; DECLARATIONS IN SUPPORT THEREOF**<br><br>**Hearing**<br>Date:  December 1, 2020<br>Time: 1:30 p.m.<br>Place: Courtroom 126<br>      3420 Twelfth St.<br>      Riverside, CA 92501 |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE; AND ALL OTHER INTERESTED PARTIES;**

    **PLEASE TAKE NOTICE** that on December 1, 2020, 2020 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 126 of the United States Bankruptcy Court for the Central District of California (the "Court") located at 3420 Twelfth St., Riverside, CA 92501, the Honorable Scott C. Clarkson presiding, Ben Clymer's The Body Shop Perris, LLC ("Perris LLC"), a creditor in the above-entitled Bankruptcy proceeding (the "Bankruptcy Case") of Ben

1

BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY

1  Clymer's The Body Shop Perris, Inc. (the "Debtor") shall move to compel the chapter 7 trustee,

2  Todd A. Frealy (the "Trustee") for the estate (the "Estate") of the debtor Ben Clymer's The Body

3  Shop Perris, Inc. (the "Debtor") to compel either assumption or rejection of the lease (the "Lease")

4  of the premises, located at 12203 Magnolia Avenue, Riverside, CA 92503 (the "Property"), which

5  the Debtor is currently operating from, and if the Lease is deemed rejected, grant Perris LLC the

6  required relief from the automatic stay, so that it would move forward with its rights and remedies

7  with respect to the Property (the "Motion").

8       The Motion is based upon this notice, the memorandum of points and authorities attached

9  thereto, declarations of Randolph Ben Clymer (the "Clymer Decl.") and Fahim Farivar (the

10 "Farivar Decl.") in support of the Motion, the arguments of counsel at any hearing on the Motion, if

11 necessary, the dockets in the Bankruptcy Case and any other matters of which the Court may take

12 judicial notice, and any other evidence or pleading presented to the Court relating to the Motion.

13      **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule ("LBR")

14 9013-1(b), any response or opposition to the Motion must be in writing and supported by any

15 memorandum of points and authorities and/or evidence upon which the opponent intends to rely in

16 opposing the Motion. Any opposition must be filed with the Court and served upon Perris LLC and

17 its counsel at the address in the upper left-hand corner of the preceding page of this notice no later

18 than fourteen (14) days before the hearing date for the Motion. If a party does not oppose the

19 Motion, they need not take any further action or, if they so choose, the party may file a written

20 statement of non-opposition with the Court and serve the same on Perris LLC and its counsel.

21      **PLEASE TAKE FURTHER NOTICE** that pursuant to LBR 9013-1(e), the failure to file a

22 timely response or opposition to the Motion may be deemed consent to the granting of the relief

23 therein requested and the Court may, without further notice or opportunity to be heard, grant the

24 Motion and waive appearances at the proposed hearing on the Motion.

25 ///

26 ///

27

28

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1      **PLEASE TAKE FURTHER NOTICE** that any party may obtain a copy of the Motion by

2   contacting Fahim Farivar, Esq., via email addressed to fahim@farivarlaw.com and Catherine Jung,

3   via email addressed to catherine@farivarlaw.com.

4

5   Dated:  October 21, 2020                    Respectfully Submitted:

6                                               **FARIVAR LAW FIRM, APC**

7

8                                      By:   */s/ Fahim Farivar*
                                             Fahim Farivar, Esq.
9                                             Attorney for Creditor,
                                             Ben Clymer's The Body Shop Perris, LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

As further explained below, the Debtor has entered into a lease agreement with Perris LLC to rent the Property for its operations. After filing the Petition, the Debtor has failed, and continues to fail, to make any rental payments to Perris LLC. Therefore, Perris LLC respectfully requests that the Court compel the Trustee  to on behalf of the Estate immediately assume or reject the lease (the "Lease," and as further described below) of the property commonly known as 12203 Magnolia Avenue, Riverside, CA 92503 (the "Property") and to pay all post-petition sums due and owing. Additionally, Perris LLC should be granted relief from the automatic stay to permit it to pursue its remedies with regard to the Property.

### II.   STATEMENT OF FACTS

The Debtor was operational for approximately 7 years. The Debtor manufactures custom built vehicles, including custom coaches, shuttle buses, and limousines for use by the hospitality industry, as well as luxury motor homes of various types and sizes, and other specialty vehicles. *See* the Clymer Decl., ¶ 6.

The Debtor is owned solely by Randolph Ben Clymer ("Mr. Clymer"), who is also the President of the Debtor.  Mr. Clymer is also the sole managing member and president of Perris, LLC. See *Id.,* ¶ 7.

Perris LLC is the owner and the landlord of the Property, where the Debtor operates from. The Property consists of approximately 1.39 acres with a 48,282 square feet multi-tenant Class B building which was built in 1998. Title to the Property is held in the name of Perris LLC.  *See Id.*, ¶ 8.

 There is a first deed of trust recorded on the Property in favor of U.S. Metro Bank ("Metro") in the approximate amount of $4.4 Million Dollars (the "Metro Loan"). *See* the Clymer Decl., ¶ 9, **Exhibit A.**  As of date of the filing of this Motion, the balance owed to Metro is approximately $4,150,000.00 (the "Metro Balance").  *See Id.*, ¶ 10.

On or about June 9, 2016, the Debtor entered into a lease agreement with Perris LLC for the lease of the Property (i.e., the Lease). *See* the Clymer Decl., ¶ 11, **Exhibit B.** Among other terms,

1  the term of the Lease was for twenty-five (25) years commencing on June 25, 2016 and ending on

2  June 24, 2041. *See Id.*, ¶ 12. Pursuant to the terms of the Lease, the rent was for the sum of Twenty-

3  Seven Thousand Five Hundred Dollars ($27,500.00) in base rent per month plus real property taxes

4  and general assessments levied and assessed against the Property during the terms of the Lease. *See*

5  *Id*.

6         The rental amounts were adjusted from time to time based on the mortgage and taxes owing

7  on the Property, which were in turn approximately $35,000 per month immediately before filing the

8  Bankruptcy Case.  See *Id*., ¶ 13.

9         The Lease Agreement and past due rents were listed in the Debtor's original bankruptcy

10  schedule F and amended schedule G.  See *Id*., ¶ 14, **Exhibit C.**

11        Perris LLC has performed all of the terms, conditions, and covenants required under the

12  terms of the Lease Agreement.  Nonetheless, the Debtor breached the terms of the Lease Agreement

13  and payment obligations associated thereto by failing to tender rent payments in March 2020 and

14  from May 2020 through the present. See *Id*., ¶ 15.

15        On or about June 24, 2020, Perris LLC executed an agreement (the "SBA Loan

16  Agreement") with the U.S. Small Business Administration ("SBA") to receive a total of

17  $154,000.00 in EIDL loan (the "EIDL Loan Proceeds").  Immediately upon execution of the SBA

18  Loan Agreement, the EIDL Loan Proceeds were directly deposited to Perris LLC's bank account,

19  account ending in x6681 (the "Perris LLC Bank Account"). See *Id*., ¶ 16.

20        On or about July 15, 2020 (the "Petition Date"), the Debtor filed a Voluntary Petition under

21  Chapter 11 of the Bankruptcy Code.  As of the Petition Date, the Debtor was in default of the terms

22  of the Lease, as among other things, the Debtor at the very minimum had failed to pay the rents due

23  for the months of May, June, and July of 2020 for a total of $105,000.00. See *Id*., ¶ 17.

24        According to the Debtor, the bankruptcy filing was necessary because the current Covid-

25  pandemic had caused the Debtor's sales to drop drastically. More specifically, the hospitality

26  industry demand has almost completely gone away without any clear prospect of its eventual return.

27  See *Id*., ¶ 18.

28        Within a week of filing the Bankruptcy Case, the Debtor created the DIP Accounts. While

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1   there seems to be miscommunication between Debtor and its counsel, Mr. Clymer, who is not a

2   legally savvy person, mistakenly transferred approximately $185,000.00 – including the EIDL Loan

3   Proceeds from the Perris LLC Bank Account - directly to the DIP Accounts.  See *Id.,* ¶ 19, **Exhibit**

4   **D**. These funds (i.e., the Funds) were not the Debtor's funds and were transferred to the DIP

5   Accounts by mistake.  See *Id*., ¶ 22.

6        The Debtor operated as a Chapter 11 debtor-in-possession until July 23, 2020 when the

7   Court, *sua sponte*, appointed a Chapter 11 trustee in the Debtor's case. Shortly thereafter, Todd A.

8   Frealy was duly appointed to serve as the Chapter 11 Trustee of the Estate.

9        The Trustee immediately took over of the funds in the DIP Accounts, including the EIDL

10   Loan Proceeds.  Despite Mr. Clymer's demand to Trustee to return the EIDL Loan Proceeds to

11   Perris, LLC, the Trustee forged ahead with seeking an approval to use the funds for the benefit of

12   the Estate by filing an emergency motion for the use of the cash (the "Emergency Motion").

13        On August 4, 2020, the Court held an evidentiary hearing and granted the Emergency

14   Motion.

15        On August 5, 2020, the Court entered an order granting the Emergency Motion (the

16   "Order") [Dkt. No. 67.]

17        On August 13, 2020, Perris LLC filed a notice of appeal (the "Appeal"), appealing the Order

18   to the United States District Court for the Central District of California (the "District Court") [Dkt.

19   No. 83.]

20        On August 31, 2020, the Appeal was docketed in the District Court (the "District Court"),

21   styled as *In re Ben Clymer's The Body Shop Perris, Inc*., Case No. 5:20-cv-01777-ODW.  Perris

22   LLC's motion to stay pending appeal was denied on September 29, 2020.   Perris LLC is

23   proceeding with requesting a stay pending appeal before the District Court.  However, because of

24   Trustee's authority to take and spend the EIDL Loan Proceed, Perris LLC has been significantly

25   damaged, as it is unable to utilize the EIDL Loan Proceeds to pay for the mortgage, taxes, and its

26   necessary business expenses, which in turn has resulted in Perris LLC falling behind on its

27   mortgage payments.

28        On or about August 11, 2020, Metro served a Demand to Pay Rent to Party Other than

6

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1  Landlord (the "Demand") to the Debtor and Perris LLC. *See* the Clymer Decl., **Exhibit E.**

2  Although Perris LLC disputes the validity and enforceability of the Demand and contends that,

3  among other things, it was served in violation of the automatic stay (to which Perris LLC reserves

4  its rights to), the Demand does not make Metro the mortgagee in possession and the subject rent

5  payments must be counted towards satisfying the secured obligation pursuant to Cal. Civ. Code §

6  2938(e).

7       Additionally, Perris LLC believes that at some point, pursuant to Sec. 1112 of the

8  Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Metro Loan was in

9  forbearance, and that in fact, SBA had agreed to pay Metro for six (6) months of the principal,

10  interest, and any associated fees (the "SBA Deferment Payments"). *See* the Clymer Decl., ¶ 21,

11  **Exhibit F.**[1]  Although U.S. Metro has claimed that the SBA Deferment Payments have been

12  stopped since in or about July 20, 2020, Perris LLC believes that any assignment of rent to Metro is

13  not only in violation of SBA rules, including the CARES Act 1112 (among other applicable

14  regulations and local rules), but also is in violation of the automatic stay pursuant to 11 U.S.C. §

15  362, especially since the Debtor is also one of the listed borrowers of the Metro Loan.  *See* the

16  Clymer Decl., **Exhibit A.**

17       Notwithstanding the foregoing, to date, the Trustee continues to use, rent, and operate the

18  Property for the benefit of the Estate in its daily business operations – all to the detriment of Perris

19  LLC - and without any payment of rent to Perris LLC or even Metro to cure the purported default

20  on the Metro Loan and/or be properly applied to the Metro Balance. *See Id.*, ¶ 23.

21       Post-petition, the Debtor has failed to pay any rent payments, and as of the filing of this

22  Motion, at least three (3) post-petition rental payments are due and owing for a total of $105,000.00

23  ($35,000.00 x 3 months), bringing the total prepetition and post-petition balance due to

24  $210,000.00. See *Id*.

25       In addition, despite good faith attempts to meet and confer with the Trustee, the Trustee has

26  _____

27  [1] The information on the SBA website states, among other things, that SBA is providing automatic
deferments to certain SBA loans through at least December 31, 2020.  *See*

28  *https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/sba-debt-relief.*

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1  refused to agree to give Perris LLC an administrative claim for the use of the Property or pay the

2  rent – even to Metro - , claiming that because of Metro's Demand, Perris LLC does not even have

3  standing to demand payments of rent.

4      Despite having Perris LLC funds, not only has the Trustee failed to make any post-petition

5  payments of rent, but he has also refused to agree to give Perris LLC an administrative claim for the

6  use of the Property.  *See* the Farivar Decl., ¶ 4. This double-dipping by the Trustee should not be

7  authorized by the Court.

8      Although the Trustee has made certain claims regarding intercompany transfers and a

9  possibility of seeking to substantively consolidate Mr. Clymer's entities, including Perris LLC,

10  Perris LLC is confident that Trustee's foregoing efforts will fail.  The preliminary review of the

11  intercompany transfers indicates that in fact the Debtor received advances and/or loans over

12  $3.5MM from Perris LLC, in addition to the rents owing. *See* the Clymer Decl., ¶ 24, **Exhibit G.**

13  *So*, even though there may have been intercompany transfers, the Debtor was ultimately the

14  benefactor of those transfers, and there are claims by Perris LLC against the Debtor, and not the

15  other way around.  See *Id*.

16      Unfortunately, by personifying Perris LLC as the "bad guy," the Trustee has been

17  occupying the premises owned by Perris LLC without even paying a penny for rent, literally

18  abusing and taking advantage of Perris LLC.  Worse yet, the Trustee has taken the EIDL Loan

19  Proceeds without agreeing to any terms and is refusing to even partially use those funds to pay rent,

20  without providing any justification.  Unfortunately, knowing that this Case will be headed to a

21  conversion to a Chapter 7 and/or will be administratively insolvent, it appears that the Trustee is

22  more concerned with satisfying the professionals' claims as opposed to rightfully complying with

23  its obligation to, among other things, have the Estate fairly pay rent for the space being used by it,

24  as further evidenced by his professional's first interim fee application, currently scheduled for

25  hearing on December 1, 2020.[2]   The Estate is unfairly receiving a double windfall at the expense of

26

27  [2] At the Debtor's status conference hearing, which was held on or about October 6, 2020, the
Trustee confirmed that the Debtor was not operating, would not have a viable path to

28

(Continued...)

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1  Perris LLC and the creditors of Perris LLC, to name a few: U.S. Metro Bank, SBA, and the

2  Riverside County Tax Collector.

3        Given Perris LLC's own financial difficulties, the status of the Bankruptcy Case, the

4  unlikelihood that the Trustee would succeed in proposing a plan of reorganization, the likelihood

5  that this Bankruptcy Case will ultimately convert to one under Chapter 7, the unlikelihood that the

6  Trustee would success in any adversary proceeding against Perris LLC and/or its  affiliated entities

7  on behalf of the Estate, Perris LLC simply cannot afford to not only have its funds depleted (i.e.,

8  the EIDL Loan Proceeds), but also have the Estate enjoy occupying the Property without paying

9  any rent, at the expense of Perris, LLC, which can potentially result in a loss of the Property in a

10  foreclosure proceeding.  Metro has already put Perris LLC on notice that unless the Metro Loan is

11  immediately brought current and/or a forbearance agreement is reached, Metro will commence a

12  non-judicial foreclosure sale immediately.  *See Id.,* ¶ 5, **Exhibit 1**.

13        Perris LLC believes that Metro's position is not correct. Perris LLC believes that the Metro

14  Loan is already in forbearance pursuant to Sec. 1112 of the CARES Act, and that in fact, SBA had

15  previously had agreed to pay Metro for six (6) months of the principal, interest, and any associated

16  fees.  *See* the Clymer Decl., **Exhibit F**. Additionally, the information provided on the SBA website

17  states that the SBA is providing automatic deferments through at least December 31, 2020.

18  Accordingly, any assignment of rent to Metro is not only in violation of SBA rules, including the

19  CARES Act 1112 (among other applicable regulations and local rules), but also will result in

20  unjustly enriching Metro by allowing it to double deep on its collection efforts.

21        Accordingly, the Court should enter an order granting the relief being sought by and

22  through the Motion.

23  ///

24  ///

25

26        (...Continued)

27  reorganization and that the Trustee will soon seek the Court's authority to convert to a Chapter 7.
   *See* the Farivar Decl., ¶ 7.

28

9

## III.  **ARGUMENT**

### A.  **DESPITE THE DEMAND SERVED BY METRO, PERRIS LLC HAS STANDING TO BRING THIS MOTION.**

As the landlord in the Lease, Perris LLC is a party to the lease and may bring this Motion. Although Metro served the Debtor with the Demand, the Demand solely states that the Debtor is to pay rent for the Premises to Metro and does not make any other claims as to the ownership or possession of the Property. *See* the Clymer Decl., **Exhibit E.**

Cal. Civ. Code 2938(e)(1) is clear that the Demand will not make Metro "a mortgagee in possession of the property, except if the assignee obtains actual possession of the real property, or an agent of the assignor."  Cal. Civ. Code 2938(e) further provides in pertinent part that:

> The application of rents, issues, or profits to the secured obligation shall satisfy the secured obligation to the extent of those rents, issues, or profits, and, notwithstanding any provisions of the assignment or other loan documents to the contrary, shall be credited against any amounts necessary to cure any monetary default for purposes of reinstatement under Section 2924c.

Cal. Civ. Code 2938(e).

Accordingly, despite the Demand, Perris LLC remains a party in interest and has standing to bring this Motion.

In addition, the Demand does not state that Metro would take over the Lease completely, which means Metro would not be liable for any default on the part of its assignor (Perris LLC) and Metro would not be able to sue for any default or breach by the Debtor. *See also Ward v. Commissioner of Internal Revenue* (9th Cir. 1932) 1933-1 C.B. 201.

*In re Riverside Nursing Home* (Bankr. S.D.N.Y. 1984) 43 B.R. 682 presents a factually similar situation. In *Riverside*, Citizens Savings Bank ("Citizens") was the mortgagee of RHN Realty Corp. ("RHN"), and RHN was the landlord for the debtor Riverside Nursing Home ("Riverside"). When Citizens lent RHN the sum of $2,000,0000.00, RHN assigned the rents due and to become due under its lease with Riverside as additional security on the loan. Citizens' pre-petition right to collect rent from Riverside following lessor-mortgagee's default gave Citizens the status of a party in interest.  *See Id.* at 684. The Court held that RHN's mortgage default triggered

1  Citizens' right to collect rent from the debtor and created an emergency debtor-creditor relationship

2  between Citizens and Riverside. Despite its debtor-creditor relationship with Riverside, Citizens

3  could not appear in the Chapter 11 case to compel Riverside to assume or reject the lease as only a

4  party to such contract or lease has standing to seek such relief. *See Id.* at 685.

5       Additionally, the *Riverside* Court held that the assignment of rent to accrue did not

6  constitute an assignment of the lease or the transfer of the lessor's reversionary interest as an

7  incident. *See Id.* Rather, such an assignment merely creates a privity of estate between the assignee

8  and the lessee, so that the assignee could maintain a suit in its own name for the rent which

9  becomes payable while such privity of estate exists. *See Id.* The *Riverside* Court further held that as

10  the assignee of rent, Citizens was not required to perform any of RHN's landlord duties under the

11  lease and may not exercise RHN's landlord rights such as removing Riverside from possession of

12  the property for nonpayment of rent. However, Citizens may continue to collect rent from Riverside

13  in reduction of its primary claim against assignor, RHN, and may seek to continue mortgage

14  foreclosure action against RHN.

15       Similar to *Riverside*, although there is a dispute regarding the validity of the Demand, at

16  best, Metro is able to collect rent from the Debtor as a reduction of Metros' claim against Perris

17  LLC. See *Ward v. Commissioner of Internal Revenue* (9th Cir. 1932) 1933-1 C.B. 201 (because

18  lessor's status under the lease remained unchanged from the assignment of rent, all payments of

19  rent made to lessor's assignee belonged to lessor and were a part of his income when received by

20  the assignee bank). Furthermore, the assignment of rent should not be seen as an assignment of the

21  entirety of the lease, and Perris LLC should most likely retain the power to remove the Debtor from

22  possessing the Premises for nonpayment of rent. There is no privity of contract between Metro and

23  the Debtor. See *Farber v. Greenberg*, 98 Cal. App. 675, 277 P. 534. Additionally, Metro does not

24  have standing to bring a motion seeking the same relief sought in this Motion as Metro's rights

25  against the Debtor rest on Perris LLC's legal rights or interests.

26       Accordingly, Perris LLC has standing to bring this Motion as its assignment of rent to Metro

27  does not affect its standing as a party to the Lease.

28

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

**B.  <u>THE ESTATE SHOULD BE COMPELLED TO MAKE AN IMMEDIATE</u>**

**<u>DECISION TO ASSUME OR REJECT THE LEASE.</u>**

11 U.S.C. § 365(d)(2) provides in relevant part:

In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

Congress intended this provision to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate." *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.),* 973 F.2d 1065, 1079 (3d Cir. 1992) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 59) (1978) reprinted in 1978 U.S.C.C.A.N. 5787, 5845).

Although the Bankruptcy Code provides chapter 11 debtors with a "breathing space" within which to determine whether a particular executory contract should be assumed or rejected, such "breathing space . . . is not without limits*." In re Enron Corp*., 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002). The limit placed on the time for the debtor's assumption/rejection determination by case law and commentators is "reasonableness." See, e.g., *Dallas-Fort Worth Regional Airport Bd. v. Braniff Airways, Inc*., 26 B.R. 628, 636 (N.D. Tex. 1982).

What constitutes "reasonable time" within which to affirm or reject a lease under 11 U.S.C. § 365(d)(2) is left to the Bankruptcy Court's discretion in light of all circumstances of the case. *In re Monroe Well Services, Inc.,* 83 B.R. 317 (Bankr. E.D.Penn. 1988); *In re New York Deli, Ltd.,* 41 B.R. 198 (Bkrtcy. D.Ha. 1984). Among the factors that the courts have used to determine what may constitute "reasonable time" for the purposes of section 365(d)(2) of the Bankruptcy Code are the following: (a) the nature of the interests at stake; (b) the balance of harm to the parties; (c) the safeguards afforded to the parties; (d) the damage third parties may suffer beyond the compensation available under the Bankruptcy Code; (e) the debtor's failure or ability to satisfy post-petition obligations; (f) the purpose of chapter 11; (g) the importance of the contract in question to the debtor's reorganization; and (h) whether the action to be taken is so in derogation of Congress' scheme as to be said to be arbitrary. *See* all cases collected in *Adelphia*, 291 B.R. at 292-94.

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1    Pursuant to Section 365(d) (4) of the Bankruptcy Code, however, non-residential real property

2    leases are deemed rejected 120 days after entry of the order for relief. *See* 11 U.S.C. § 365(d) (4).

3    Cause exists to shorten the period for assumption or rejection when the debtor is not making

4    payments under a lease while deciding whether to assume or reject. *See Theatre Holding Corp.,* 681

5    F.2d at 105 (2d Cir. 1982) (noting that to allow a longer period of time when the debtor is not

6    making payments under the contract was unfair to the creditor and allowed the debtor to "have its

7    cake and eat it too").

8        The Court must make an equitable determination, based on the balance of harm, in light of

9    the particular circumstances of the parties to the Lease. In applying the *Adelphia* factors, Perris LLC

10   respectfully submits that the circumstances in this Bankruptcy Case should persuade the Court to

11   compel the assumption or rejection of the Lease.

12        In this Bankruptcy Case, the balance of harm tips heavily in favor of requiring the Trustee to

13   make an immediate determination whether to assume or reject the Lease. Debtor already owes

14   delinquent rent to Perris LLC in excess of $210,000.00. Moreover, the Trustee, has indicated to

15   Perris LLC that he has no intention of making any rental payment to Perris LLC. *See* the Farivar

16   Decl., ¶ 4.  The Trustee has also indicated that the Debtor has no reasonable likelihood of

17   reorganizing and that it will soon convert to a Chapter 7.  *See Id.*, ¶ 7. Under such circumstances,

18   the Trustee should be compelled to make an immediate decision to assume or reject the Lease,

19   especially since the Trustee continues to use the Property to store the assets and conduct the sale of

20   those assets from there.

21   **C.  <u>DEBTOR SHOULD BE COMPELLED TO PAY ALL POST-PETITION SUMS</u>**

22       **<u>DUE AND OWING. OTHERWISE, IT SHOULD BE ORDERED TO VACATE</u>**

23       **<u>AND SURRENDER THE PREMISES.</u>**

24   11 U.S.C. § 365(d)(3) provides in relevant part:

25   "The trustee shall timely perform all of the obligations of the debtor, except those
     specified in section 365(b)(2), first arising from or after 60 days after the order for
26   relief in a case under chapter 11 of this title under an unexpired lease of personal
     property… until such lease is assumed or rejected notwithstanding section
27   503(b)(1) of this title, unless the court, after notice and a hearing and based on the
     equities of the case, orders otherwise with respect to the obligations or timely

28

---

13

1    performance thereof.

2

3    Subsection 365(d) (3) of the Bankruptcy Code requires a debtor to pay all post-petition

4    obligations under an unexpired nonresidential real property lease immediately as those obligations

5    become due. *See Cukierman v. Uecker (In re Cukierman),* 265 F.3d 846, 851 (9th Cir. 2001);

6    *Towers v. Chickering & Gregory (In re Pacific-Atlantic Trading Co.),* 27 F.3d 401, 405 (9th Cir.

7    1994).

8    As noted by the Ninth Circuit in *Cukierman:*

9    This purpose is evident from the legislative history of the section, which was added
     to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act
10   of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984). Upon submitting the conference
     report for the bill containing § 365(d)(3), Senator Hatch observed that when the
11   trustee stops making payments to the landlord for such items as rent and common
     area charges, the landlord is out of pocket the value of services it must continue to
12   provide.

13   "[T]he landlord is forced to provide current services - the use of its property, utilities,

14   security, and other services - without current payment. No other creditor is put in this position. In

15   addition, the other tenants often must increase their common area charge payments to compensate

16   for the trustee's failure to make the required payments for the debtor." 254 F.3d at 851 (quoting 130

17   Cong. Rec. S8887, 8895 (daily ed. June 29, 1984) (statement of Sen. Hatch), reprinted in 1984

18   U.S.C.C.A.N.).

19   In short, the purpose of Section 365(d)(3) is to protect nonresidential landlords from the

20   situation where the trustee does not make or stops making payments under its leases during the time

21   that it is deciding whether to assume or reject its lease, while continuing to benefit from the use or

22   occupancy. This is exactly what is occurring here. Perris LLC is being forced to provide post-

23   petition services in the form of the use of the premises without any payment whatsoever. As such,

24   Perris LLC is being forced to extend post-petition credit to Debtor on terms over which it has no

25   control, and in fact, has no reasonable likelihood of recovering. This is exactly the inequitable

26   treatment that Section 365(d)(3) of the Bankruptcy Code was designed to protect.

27   As a result, the Court should compel the Trustee to pay all post-petition sums due and

28   owing, and if failing immediate and timely payment, should order the Trustee to vacate and

14

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

surrender the Property.  For the purposes of this Motion and while reserving its rights, Perris LLC is agreeable if any and all rent payments by Estate is remitted directly to Metro to be applied towards the Metro Balance.

**D. ALTERNATIVELY, PERRIS LLC SHOULD BE GRANTED RELIEF FROM THE AUTOMATIC STAY TO PERMIT IT TO PURSUE ITS REMEDIES WITH REGARD TO THE PREMISES.**

If the Court decides not to grant the foregoing relief, Perris LLC alternatively respectfully requests that the Court enter an order terminating the automatic stay for the following reasons:

### i. Relief From Stay Pursuant to Section 362(d)(1)

A creditor is entitled to relief from the automatic stay if it can establish cause, including lack of adequate protection of its interest. *See* 11 U.S.C. § 362(d)(1). Adequate protection for a landlord of nonresidential property is governed by 11 U.S.C. § 365(d)(3), which states in pertinent part, "[t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

The 1984 Amendments to the Bankruptcy Code were intended to assure a lessor under a nonresidential real property lease the right to post-petition performance under an unexpired lease. *See In re Handy Andy Home Improvement Centers, Inc.,* 144 F.3d 1125, 1128 (7th Cir.1998); *In re Pacific-Atlantic Trading Co.,* 27 F.3d 401, 403 (9th Cir.1994); *In re Pudgie's Development of NY, Inc.,* 239 B.R. 688, 692-693 (S.D.N.Y.1999). The Amendments added to § 365(d)(3), which provides that a lessee's obligations under an unexpired lease of nonresidential real property must be timely performed until such lease is assumed or rejected. 11 U.S.C. § 365(d)(3). The purpose of section 365(d)(3) is "to ameliorate the immediate financial burden borne by lessors of nonresidential real property during the period in which trustees decided whether to assume a lease." *In re Pacific-Atlantic Trading Co., supra,* 27 F.3d at 403, citing 130 Cong. Rec. S8894-95 (daily ed. June 29, 1984) (remarks of Senator Hatch). It has been noted that "the legislative history demonstrates a concern about the unfairness which occurs when a landlord is forced, in effect, to

1  extend credit to the bankruptcy estate prior to assumption or rejection of the lease." Norton,

2  *Bankruptcy Law and Practice 2d* § 39:42 (1983).

3          **ii.**    **Relief From Stay Pursuant to Section 362(d)(2)**

4        Under Section 362(d)(2), relief from stay may be granted where the Debtor lacks equity to

5  the subject property and lacks a need of the property for an effective reorganization. *See* 11 U.S.C.

6  § 362(d)(2)(A), (B). However, § 362(g)(1) establishes that the moving creditor has the burden to

7  prove lack of equity and the 'party opposing [stay] relief has the burden of proof on all other

8  issues.'" *In re Jordan,* 392 B.R. 428, 450 fn. 40 (Bkrtcy.D.Idaho, 2008). The Supreme Court

9  addressed the Debtor's burden under § 362(d)(2)(B):

10        Once the movant under § 362(d)(2) establishes that he is an under secured creditor, it is the

11  burden of the debtor to establish that the collateral at issue is "necessary to an effective

12  reorganization." What this requires is not merely showing that if there is to be an effective

13  reorganization, this property will be needed for it; but that the property is essential for an effective

14  reorganization that is in prospect. This means ... that there must be "a reasonable possibility of a

15  successful reorganization within a reasonable time." *Jordan,* 392 B.R. at 450, quoting *United Sav.*

16  *Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 375-76, 108 S.Ct. 626, 98

17  L.Ed.2d 740 (1988).

18        In this Bankruptcy Case, the Debtor, as tenant, does not possess any equity in the leased

19  Property. *See Jordan*, 392 B.R. at 448 ("In the context of stay relief, 'equity' exists if the value of

20  the property exceeds all claims secured by such property, whether those claims belong to the

21  moving creditor or others.") The burden thus shifts to the Debtor to prove the leased premises are

22  necessary for an effective organization, which the Trustee has already confirmed that it will not

23  occur. *See Jordan, supra. See* the Farivar Decl., ¶ 8. Accordingly, the Debtor likely has no need for

24  the Property.

25          **iii.**    **Relief From Stay Pursuant to Section 365(d)(3)**

26        The Court shall grant relief from an automatic stay for cause, including the lack of adequate

27  protection of an interest in property of such interest. *See* 11 U.S.C. § 362(d)(1). The term "cause" is

28  not defined in the Bankruptcy Code and must be determined on a case by case basis. *Christianson*

1   *v. Tucson Estates, Inc., (In re Tucson Estates, Inc.),* 912 F.2d 1162, 1166 (9th Cir. 1990). A

2   debtor's failure to pay post-petition rent is cause to lift the automatic stay to allow a landlord to

3   pursue state court remedies against the debtor, especially where the debtor cannot provide adequate

4   protection to the lessor or where the debtor does not give adequate assurance of future performance.

5   *In re Rocchio*, 125 B.R. 345, 347 (Bankr. D.R.I. 1991). The *Rocchio* court found that the stay

6   should be lifted because the debtor owed pre-petition rent, post-petition rent, failed to pay post-

7   petition rent, and failed to provide any evidence that it would cure the default, provide adequate

8   protection, or give adequate assurance of future promise. *See Id.*

9          Here, cause exists to lift the automatic stay because the Debtor has failed to pay post-

10  petition rent. As discussed above, the Debtor is required to perform all obligations of a lease of

11  nonresidential property post-petition, which it has failed to do. In fact, the Trustee has blatantly and

12  intentionally disregarded its duties under the Lease, imposing financial hardship on Perris LLC. As

13  evidenced by the Trustee's Motion to Sell the Estate's Personal Property Free and Clear of All

14  Liens or Interests (the "Sale Motion") [Dkt. No. 165], the Estate seeks to sell assets of the Estate

15  and recover hundreds of thousands of dollars, while it enjoys free rent, all to detriment of Perris

16  LLC.

17         Additionally, the Debtor has failed to provide any evidence or assurance that it has the

18  ability to cure the Debtor's default under the Lease or that it intends to pay any rent already due and

19  owing.   To the contrary, the Trustee has advised that the Debtor will not make rental payments to

20  Perris LLC.

21         Accordingly, the Court should lift the automatic stay and allow Perris LLC to seek its

22  appropriate remedies.

23  **E.   PERRIS LLC WILL SUFFER SIGNIFICANT AND/OR IRREPARABLE HARM**

24  **ABSENT RELIEF BEING SOUGHT HEREIN.**

25         If the Court does not grant the relief being sought herein, coupled with the fact that the

26  Debtor has already depleted Perris LLC's funds (i.e., the EIDL Loan Proceeds), Perris LLC will,

27  without any funds, be significantly harmed as it will be left with nothing to pay for its mortgage,

28  taxes, and other business expenses, especially since the Estate is currently refusing to pay rent

17

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1  despite continued use of the premises post-petition.

2          On the other hand, the Estate will not be harmed and certainly will not suffer substantial

3  harm. The Estate has sufficient funds to pay rents and even expect to obtain large proceeds from the

4  sale of the Estate's assets.  Since the Debtor is no longer operating, the Estate has the option of

5  renting a storage space - at a much cheaper price than the current rent - and store the Estate's

6  personal property until they are sold.  The Estate should not receive a double windfall at the

7  expense of Perris LLC and its legitimate creditors – especially after the Debtor has already received

8  the EIDL Loan Proceeds from Perris LLC.   If no rent is paid and Perris LLC does not have the

9  ability to re-lease the Property, Metro will likely commence foreclosure proceeding against Perris

10  LLC, and the Estate's actions herein can potentially result in Perris LLC losing the Property.

11  Additionally, Trustee admits that the Debtor no longer has any viable operation. Thus, it does not

12  have any business expenses.  In the meantime, the Debtor's only financial obligation is a payment

13  of approximately $14,000.00 for the Debtor's general liability insurance and certain utilities

14  payments. There is no legitimate reason for the Estate not to pay rent and use the Property for free

15  to the detriment of Perris LLC and its creditors.  Based on the lack of substantial harm to the Estate

16  and significant harm to Perris LLC, Perris LLC believes that the Court should grant the Motion.

17  ///

18  ///

19

20

21

22

23

24

25

26

27

28

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

**IV.**    **CONCLUSION**

WHEREFORE, Perris LLC respectfully requests that the Court enter an order:

1) Granting the Motion;

2) Compelling the Debtor to make an immediate decision to assume or reject the Lease;

3) Compelling the Debtor to pay all post-petition sums due and owing or to vacate and surrender the Property;

4) Or alternatively, terminating the automatic stay to allow Perris LLC to pursue its appropriate remedies with regard to the Property; and

5) Enter such other relief as the Court deems appropriate under the circumstances.

Dated:  October 21, 2020                    Respectfully Submitted:

                                    **FARIVAR LAW FIRM, APC**

                            By:    */s/ Fahim Farivar*_____
                                    Fahim Farivar, Esq.
                                    Attorney for Creditor,
                                    Ben Clymer's The Body Shop Perris, LLC

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1

### DECLARATION OF FAHIM FARIVAR

2      I, FAHIM FARIVAR, declare:

3      1.   I am an attorney duly admitted to practice before this Court.  I am the owner of Farivar Law

4  Firm, APC, counsel of record for the appellant, Ben Clymer's The Body Shop Perris, LLC ("Perris

5  LLC"), a creditor in the above-captioned case (the "Case"). [3]

6      2.   I have personal knowledge of the facts set forth herein, except where stated upon

7  information and belief, and if called as a witness I could and would competently testify to such

8  facts.

9      3.   I submit this declaration in support of the Motion.

10      4.   Despite my efforts to meet and confer with the Trustee regarding the issues being raised by

11  and through the Motion, not only has the Trustee failed to make any post-petition payments to

12  Perris LLC for rent, but he has also refused to agree to give Perris LLC an administrative claim for

13  the use of the Property.  The Trustee's counsel, Ms. Monica Kim, has specifically indicated to me

14  that the Trustee has no intention of making any rental payment to Perris LLC.

15      5.   Metro has already put Perris LLC on notice that unless the Metro Loan is immediately

16  brought current and/or a forbearance agreement is reached, Metro will commence a non-judicial

17  foreclosure sale immediately.  A true and correct copy of Metro's counsel's email, confirming the

18  foreground, is attached hereto as **Exhibit 1** and incorporated herein and in the Motion by this

19  reference.

20  ///

21  ///

22

23

24

25

26

---

27  [3] Capitalized terms not defined herein have the same meaning given to them as in the underlying

28  Motion.

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1      6.    Additionally, at the Debtor's status conference hearing, which was held on or about October

2    6, 2020, the Trustee's counsel, Ms. Kim, has already confirmed that the Debtor was not operating,

3    would not have a viable path to reorganization and that the Trustee would soon seek the Court's

4    authority to convert to a Chapter 7 as a more viable path for this Case.

5

6         I declare under penalty of perjury under the laws of the United States of America and the

7    State of California that the foregoing is true and correct. Executed on October 21, 2020, at Tarzana,

8    California.

9                                                     *Fahim Farivar*
10                                                     FAHIM FARIVAR, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

# Exhibit 1

| | |
|---|---|
| **From:** | Young Lim <ylim@parkandlim.com> |
| **Sent:** | Monday, October 19, 2020 4:44 PM |
| **To:** | Fahim Farivar; 'Heesok Park' |
| **Cc:** | Catherine Jung; Brian Ning |
| **Subject:** | RE: Ben Clymer's The Body Shop Perris, Inc. - Bankruptcy Case No. 6:20-bk-14798-SC - Meet and Confer - Withdrawal of Demand to Pay Rent to Party Other than Landlord by U.S. Metro Bank |

Fahim,

As mentioned we will NOT stipulate to withdraw our Demand to Pay Rent. In addition, as mentioned, the bank needs the loan to be brought current.  As mentioned unless a forbearance agreement is reached, the bank will commence a non judicial foreclosure sale. We will send you a copy of the Notice of Default when such notice is sent.

Please call me on my direct line at (213) 384-4928 if you want to discuss any of the foregoing.

Best
S. Young Lim

# DECLARATION OF RANDOLPH BEN CLYMER

I, RANDOLPH BEN CLYMER, declare as follows:

1. I am the Managing Member of the Debtor and Ben Clymer's The Body Shop Perris, LLC ("Perris LLC"), a creditor in the above-entitled Bankruptcy case (the "Bankruptcy Case").[4]

2. I am generally responsible for managing the operations of the Debtor and Perris, LLC (collectively, the "Subject Entities"), and, thus, am familiar with their operations, assets, and liabilities.

3. I have personal knowledge of the facts stated herein as more fully set forth below or have gained such knowledge by review of the file and if called as a witness, I could and would competently testify thereto.

4. I submit this declaration in support of the Motion.

5. I have read the contents of the Motion, and to the best of my knowledge, all the representations and statements therein as they relate to the Subject Entities are true and correct and are incorporated herein by this reference.

6. The Debtor was operational for approximately 7 years. The Debtor manufactures custom built vehicles, including custom coaches, shuttle buses, and limousines for use by the hospitality industry, as well as luxury motor homes of various types and sizes, and other specialty vehicles.

7. I solely own and am the President of the Debtor. I am also the sole managing member and president of Perris, LLC.

8. Perris LLC is the owner and the landlord of the Property, where the Debtor operates from. The Property consists of 1.39 acres with a 48,282 square feet multi-tenant Class B building which was built in 1998. Title to the Property is held in the name of Perris LLC.

9. There is a first deed of trust recorded on the Property in favor of U.S. Metro Bank ("Metro") in the approximate amount of $4.4 Million Dollars. A true and correct copy of the first deed of trust is attached hereto as **Exhibit A** and incorporated herein and in the Motion by this reference.

---

[4] Capitalized terms not defined herein have the same meaning given to them as in the underlying Motion.

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

10. As of the date of the filing of this Motion, the balance owed to Metro is approximately $4,150,000.00 (the "Metro Balance").

11. On or about June 9, 2016, the Debtor entered into a lease agreement with Perris LLC for the lease of the Property (i.e., the Lease). A true and correct copy of this lease is attached hereto as **Exhibit B** and incorporated herein and in the Motion by this reference.

12. Among other terms, the term of the Lease was for twenty-five (25) years commencing on June 25, 2016 and ending on June 24, 2041. *See Id.* Pursuant to the terms of the Lease, the rent was for the sum of Twenty-Seven Thousand Five Hundred Dollars ($27,500.00) in base rent per month plus real property taxes and general assessments levied and assessed against the Property during the terms of the Lease.

13. The rental amounts were adjusted from time to time based on the mortgage and taxes owing on the Property, which were in turn approximately $35,000 per month immediately before filing the Bankruptcy Case.

14. The Lease Agreement and past due rents were listed in the Debtor's original bankruptcy schedule F and amended schedule G. True and correct copies of the original bankruptcy schedule F and amended schedule G are attached hereto as **Exhibit C** and incorporated herein and in the Motion by this reference.

15. Perris LLC has performed all of the terms, conditions, and covenants required under the terms of the Lease Agreement.  Nonetheless, the Debtor breached the terms of the Lease Agreement and payment obligations associated thereto by failing to tender rent payments in March 2020 and from May 2020 through the present.

16. On or about June 24, 2020, Perris LLC executed an agreement (the "SBA Loan Agreement") with the U.S. Small Business Administration ("SBA") to receive a total of $154,000.00 in EIDL loan (the "EIDL Loan Proceeds").  Immediately upon execution of the SBA Loan Agreement, the EIDL Loan Proceeds were directly deposited to Perris LLC's bank account, account ending in x6681 (the "Perris LLC Bank Account").

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

17. On or about July 15, 2020 (the "Petition Date"), the Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code.  As of the Petition Date, the Debtor was in default of the terms of the Lease, as among other things, the Debtor at the very minimum had failed to pay the rents due for the months of May, June, and July of 2020 for a total of $105,000.00.

18. According to the Debtor, the bankruptcy filing was necessary because the current Covid-pandemic had caused the Debtor's sales to drop drastically. More specifically, the hospitality industry demand has almost completely gone away without any clear prospect of its eventual return.

19. Within a week of filing the Bankruptcy Case, the Debtor created the DIP Accounts. While there seems to be miscommunication between Debtor and its counsel, I, a not legally savvy person, mistakenly transferred approximately $185,000.00 – including the EIDL Loan Proceeds from the Perris LLC Bank Account - directly to the DIP Accounts. A true and correct copy of the proof of transfer of funds is attached hereto as **Exhibit D** and incorporated herein and in the Motion by this reference.

20. On or about August 11, 2020, Metro served a Demand to Pay Rent to Party Other than Landlord (the "Demand") to the Debtor and Perris LLC. A true and correct copy of the Demand is attached hereto as **Exhibit E** and incorporated herein and in the Motion by this reference.

21. Additionally, Although U.S. Metro has claimed that the SBA Deferment Payments have been stopped since in or about July 20, 2020, Perris LLC believes that at some point, pursuant to Sec. 1112 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Metro Loan was in forbearance, and that in fact, SBA had agreed to pay Metro for six (6) months of the principal, interest, and any associated fees (the "SBA Deferment Payments"). A true and correct copy of correspondence from Metro reflecting this is attached hereto as **Exhibit F** and incorporated herein and in the Motion by this reference.

22. These funds (i.e., the Funds) were not the Debtor's funds and were transferred to the DIP Accounts by mistake.

23. To date, the Trustee continues to use, rent, and operate the Property for the benefit of the Estate in its daily business operations – all to the detriment of Perris LLC – and without any payment of rent to Perris LLC or even Metro to cure the purported default on the Metro Loan

24

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1  and/or be properly applied to the Metro Balance.  Post-petition, the Debtor has failed to pay any

2  rent payments, and as of the filing of this Motion, at least three (3) post-petition rental payments are

3  due and owing for a total of $105,000.00 ($35,000.00 x 3 months), bringing the total prepetition

4  and post-petition balance due to $210,000.00.

5      24. Notwithstanding the foregoing, the preliminary review of the intercompany transfers

6  indicates that in fact the Debtor received advances and/or loans over $3.5MM from Perris LLC, in

7  addition to the rents owing. A true and correct copy of the analysis of the funds loaned by Perris

8  LLC to the Debtor, along with the backup / supporting corresponding bank statements, is attached

9  hereto as **Exhibit G** and incorporated herein and in the Motion by this reference. So, even though

10  there may have been intercompany transfers, the Debtor was ultimately the benefactor of those

11  transfers, and there are claims by Perris LLC against the Debtor, and not the other way around.

12

13      I declare under penalty of perjury under the laws of the United States of America and the

14  State of California that the foregoing is true and correct. Executed on October 21, 2020, at

15  Riverside, California.

16

17

18                                                    _____
                                                     RANDOLPH BEN CLYMER

19

20

21

22

23

24

25

26

27

28

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION
LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1    and/or be properly applied to the Metro Balance.  Post-petition, the Debtor has failed to pay any

2    rent payments, and as of the filing of this Motion, at least three (3) post-petition rental payments are

3    due and owing for a total of $105,000.00 ($35,000.00 x 3 months), bringing the total prepetition

4    and post-petition balance due to $210,000.00.

5      24. Notwithstanding the foregoing, the preliminary review of the intercompany transfers

6    indicates that in fact the Debtor received advances and/or loans over $3.5MM from Perris LLC, in

7    addition to the rents owing. A true and correct copy of the analysis of the funds loaned by Perris

8    LLC to the Debtor, along with the backup / supporting corresponding bank statements, is attached

9    hereto as **Exhibit G** and incorporated herein and in the Motion by this reference. So, even though

10    there may have been intercompany transfers, the Debtor was ultimately the benefactor of those

11    transfers, and there are claims by Perris LLC against the Debtor, and not the other way around.

12

13      I declare under penalty of perjury under the laws of the United States of America and the

14    State of California that the foregoing is true and correct. Executed on October 21, 2020, at

15    Riverside, California.

16

17

18        RANDOLPH BEN CLYMER

19

20

21

22

23

24

25

26

27

28

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION
TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION**

EXHIBIT A

DOC # 2016-0276953

07/05/2016 02:59 PM Fees: $45.00
Page 1 of 11
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**Fidelity-Sherman Oaks**

**RECORDATION REQUESTED BY:**
US METRO BANK
SBA Loan Department
3530 Wilshire Boulevard, #1350
Los Angeles, CA 90010

**WHEN RECORDED MAIL TO:**
US METRO BANK
SBA Loan Department
3530 Wilshire Boulevard, #1350
Los Angeles, CA 90010

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: CHERYL #637

*134397*

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS DEED OF TRUST is dated June 24, 2016, among BEN CLYMER'S THE BODY SHOP PERRIS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, whose address is 12203 MAGNOLIA AVENUE, RIVERSIDE, CA 92503 ("Trustor"); US METRO BANK, whose address is SBA Loan Department, 3530 Wilshire Boulevard, #1350, Los Angeles, CA 90010 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and CHICAGO TITLE COMPANY, whose address is 500 North Brand Boulevard, Suite 200, Glendale, CA 91203 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in RIVERSIDE County, State of California:

> See EXHIBIT A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 12203 MAGNOLIA AVENUE, RIVERSIDE, CA 92503. The Assessor's Parcel Number for the Real Property is 142-160-021.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

TRUSTOR'S REPRESENTATIONS AND WARRANTIES. Trustor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor; (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

TRUSTOR'S WAIVERS. Except as prohibited by applicable law, Trustor waives any right to require Lender to (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (b) proceed against any person, including Borrower, before proceeding against Trustor; (c) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Trustor; (d) apply any payments or proceeds received against the Indebtedness in any order; (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (f) disclose any information about the Indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (g) pursue any remedy or course of action in Lender's power whatsoever.

Trustor also waives any and all rights or defenses arising by reason of (h) any disability or other defense of Borrower, any other guarantor or surety or any other person; (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (j) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender; (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (l) any statute of limitations in any action under this Deed of Trust or on the Indebtedness; or (m) any modification or change in terms of the

**Fidelity-Sherman Oaks**

**RECORDATION REQUESTED BY:**
US METRO BANK
SBA Loan Department
3530 Wilshire Boulevard, #1350
Los Angeles, CA  90010

**WHEN RECORDED MAIL TO:**
US METRO BANK
SBA Loan Department
3530 Wilshire Boulevard, #1350
Los Angeles, CA  90010

*134397*

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS DEED OF TRUST is dated June 24, 2016, among BEN CLYMER'S THE BODY SHOP PERRIS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, whose address is 12203 MAGNOLIA AVENUE, RIVERSIDE, CA 92503 ("Trustor"); US METRO BANK, whose address is SBA Loan Department, 3530 Wilshire Boulevard, #1350, Los Angeles, CA  90010 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and CHICAGO TITLE COMPANY, whose address is 500 North Brand Boulevard, Suite 200, Glendale, CA 91203 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in RIVERSIDE County, State of California:**

> See EXHIBIT A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

**The Real Property or its address is commonly known as  12203 MAGNOLIA AVENUE, RIVERSIDE, CA  92503. The Assessor's Parcel Number for the Real Property is 142-160-021.**

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

TRUSTOR'S REPRESENTATIONS AND WARRANTIES. Trustor warrants that:  (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender;  (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property;  (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor;  (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and  (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

TRUSTOR'S WAIVERS. Except as prohibited by applicable law, Trustor waives any right to require Lender to  (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness;  (b) proceed against any person, including Borrower, before proceeding against Trustor;  (c) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Trustor;  (d) apply any payments or proceeds received against the Indebtedness in any order;  (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale;  (f) disclose any information about the Indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or  (g) pursue any remedy or course of action in Lender's power whatsoever.

Trustor also waives any and all rights or defenses arising by reason of  (h) any disability or other defense of Borrower, any other guarantor or surety or any other person;  (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness;  (j) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender;  (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise;  (l) any statute of limitations in any action under this Deed of Trust or on the Indebtedness; or  (m) any modification or change in terms of the

## DEED OF TRUST
### (Continued)

**Loan No: 8531475009**

Page 2

Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

Trustor waives all rights and defenses that Trustor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged by Borrower. (2) If Lender forecloses on any real property collateral pledged by Borrower: (A) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Trustor acknowledges that Trustor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all Indebtedness is paid in full, Trustor waives any right to enforce any remedy Trustor may have against Borrower's or any other guarantor, surety, or other person, and further, Trustor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the

# DEED OF TRUST
## (Continued)

Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least fifteen (15) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

## DEED OF TRUST
## (Continued)

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and

## DEED OF TRUST
## (Continued)

Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Trustor pay all the Indebtedness when due, and Trustor otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Trustor or on Borrower's or Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Borrower's or Trustor's existence as a going business, the insolvency of Borrower or Trustor, the appointment of a receiver for any part of Borrower's or Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Trustor under the terms of any other agreement between Borrower or Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement

**DEED OF TRUST**

**(Continued)**

concerning any indebtedness or other obligation of Borrower or Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment, is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

## DEED OF TRUST
### (Continued)

Loan No: 8531475009

Page 7

---

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of RIVERSIDE County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**SBA PROVISION.**
The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**DEED OF TRUST
(Continued)**

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury. To the extent permitted by applicable law, all parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means US METRO BANK, and its successors and assigns.

**Borrower.** The word "Borrower" means BEN CLYMER'S THE BODY SHOP PERRIS LLC, BEN CLYMER'S THE BODY SHOP PERRIS INC. and RANDOLPH BEN CLYMER and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of

## DEED OF TRUST
### (Continued)

**Loan No: 8531475009**                                                                 **Page 9**

---

default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means US METRO BANK, its successors and assigns.

**Note.** The word "Note" means the promissory note dated June 24, 2016, **in the original principal amount of $4,390,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" mean all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means CHICAGO TITLE COMPANY, whose address is 500 North Brand Boulevard, Suite 200, Glendale, CA 91203 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means BEN CLYMER'S THE BODY SHOP PERRIS LLC.

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.**

TRUSTOR:

BEN CLYMER'S THE BODY SHOP PERRIS LLC

By: _____
RANDOLPH BEN CLYMER, MANAGING MEMBER of BEN CLYMER'S THE BODY SHOP PERRIS LLC

# DEED OF TRUST
## (Continued)

Loan No: 8531475009

Page 10

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF _CALIFORNIA_ )

) SS

COUNTY OF _Los Angeles_ )

On _June 25_, 20 _16_ before me, _Raul Pincheira, A Notary Public_,
(here insert name and title of the officer)

personally appeared **RANDOLPH BEN CLYMER**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

RAUL PINCHEIRA
COMM. #2124081
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. SEPT. 15, 2019

(Seal)

---

## (DO NOT RECORD)
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____

Date: _____

Beneficiary: _____

By: _____

Its: _____

LaserPro, Ver. 16.1.10.003 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved. - CA i:\CFI\LPL\G01.FC TR-922 PR-16

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF RIVERSIDE, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF LOT 13 IN BLOCK 50 OF THE LANDS OF RIVERSIDE LAND AND IRRIGATING COMPANY, AS SHOWN BY MAP ON FILE IN BOOK 1, PAGE 72, (KNOWN IN RIVERSIDE AS MAP ON FILE IN BOOK 1, PAGE 70), RECORDS OF SAN BERNARDINO COUNTY, CALIFORNIA, TOGETHER WITH PARCEL 1 AS DESCRIBED IN LOT LINE ADJUSTMENT NO. 013-978, RECORDED MARCH 12, 1998 AS INSTRUMENT NO. 091399 AND A PORTION OF PARCEL 2 AS DESCRIBED IN LOT LINE ADJUSTMENT NO. 013-978, RECORDED MARCH 8, 2000 AS INSTRUMENT NO. 085394, BOTH OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, LOCATED IN THE CITY OF RIVERSIDE, RIVERSIDE COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID PARCEL 2; THENCE SOUTH 34° 18' 5" EAST ALONG THE NORTHEASTERLY LINE OF SAID PARCEL 2;

A DISTANCE OF 121.64 FEET; THENCE SOUTH 49° 49'58" WEST, A DISTANCE OF 240.37 FEET TO A POINT ON THE SOUTHWESTERLY LINE OF SAID PARCEL 2;

THENCE SOUTH 34° 18' 15" EAST ALONG THE SOUTHWESTERLY LINE OF SAID PARCEL 2, A DISTANCE OF 240.27 FEET TO THE MOST SOUTHERLY CORNER THEREOF, SAID POINT ALSO BEING ON THE NORTHWESTERLY RIGHT OF WAY LINE (77.00 FEET IN HALF WIDTH) OF MAGNOLIA AVENUE, AS SHOWN ON RECORD OF SURVEY ON FILE IN BOOK 104, PAGE 77, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

THENCE SOUTH 55°41' 45" WEST ALONG SAID NORTHWESTERLY RIGHT OF WAY LINE OF MAGNOLIA AVENUE AND ALONG THE SOUTHEASTERLY LINE OF SAID PARCEL 1, A DISTANCE OF 203.00 FEET TO THE BEGINNING OF A CURVE, CONCAVE NORTHERLY, HAVING A RADIUS OF 40.50 FEET;

THENCE SOUTHWESTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 59° 47' 29", AN ARC DISTANCE OF 42.26 FEET TO WHICH POINT A RADIAL LINE BEARS SOUTH 25029,M" WEST, SAID POINT ALSO BEING ON THE SOUTHWESTERLY LINE OF SAID PARCEL 1 AND THE NORTHEASTERLY RIGHT OF WAY LINE (44.00 FEET IN HALF WIDTH) OF BUCHANAN STREET, AS SHOWN ON SAID RECORD OF SURVEY;

THENCE NORTH 34° 18' 15" WEST ALONG SAID SOUTHWESTERLY LINE OF PARCEL 1 AND SAID NORTHEASTERLY RIGHT OF WAY LINE OF BUCHANAN STREET, A DISTANCE OF 215.49 FEET TO THE MOST WESTERLY CORNER THEREOF, SAID POINT ALSO BEING ON THE SOUTHEASTERLY RIGHT OF WAY LINE OF THE LA SIERRA STORM CHANNEL, AS SHOWN ON SAID RECORD OF SURVEY;

THENCE NORTH 38°09100" EAST ALONG THE NORTHWESTERLY LINES OF SAID PARCELS 1 AND 2 AND ALONG THE SOUTHEASTERLY RIGHT OF WAY LINE OF SAID LA SIERRA STORM CHANNEL, A DISTANCE OF 500.39 FEET TO THE POINT OF BEGINNING.

SAID LAND IS ALSO DELINEATED AND SHOWN AS PARCEL A OF THE CITY OF RIVERSIDE CERTIFICATE OF COMPLIANCE FOR LOT LINE ADJUSTMENT NO. LL-P04-0566 RECORDED ON DECEMBER 28, 2004 AS INSTRUMENT NO. 2004-1024769 OF OFFICIAL RECORDS.

APN: **142-160-021**

EXHIBIT B

# LEASE
### (General Form)

1.    PARTIES:

This Lease is made and entered into this 9ᵗʰ day of June 2016 by and between Ben Clymer's The Body Shop Perris LLC (hereinafter referred to as "Landlord") and Ben Clymer's The Body Shop Perris Inc. (hereinafter referred to as "Tenant").

2.    PREMISES:

Landlord hereby leases to Tenant and Tenant hereby leases from Landlord, on the terms and conditions hereinafter set forth, that certain real property and the building and other improvements located thereon situated in the city of Riverside, commonly known 12203 Magnolia Avenue, Riverside, CA 92503 and described as Exhibit A (said real property is hereinafter called the "Premises").

3.    TERM:

The term of this Lease shall be for 25 years commencing on June 25, 2016 and ending on June 24, 2041.

4.    RENT:

Tenant shall pay to Landlord as rent for the Premises, the sum of **$27,500.00** per month in advance on the first day of each month during the term hereof.  Rent shall be payable without notice or demand and without any deduction, off-set, or abatement in lawful money of the United States to the Landlord at the address stated herein for notices or to such other persons or such other places as the Landlord may designate to Tenant in writing.

5.    TAXES:

(a)    Real Property Taxes

The tenant shall pay all real property taxes and general assessments levied and assessed against the Premises during the term of this Lease.

(b)    Personal Property Taxes

Tenant shall pay prior to the delinquency all taxes assessed against and levied upon the trade fixtures, furnishings, equipment and other personal property of Tenant contained in the Premises.

6.    UTILITIES:

Tenant shall make all arrangements and pay for all water, gas, heat, light, power, telephone and other utility services supplied to the Premises together with any taxes thereon and for all connection charges.

7.    ALTERATIONS AND ADDITIONS:

Tenant shall not, without the Landlord's prior written consent, make any alterations, improvements or additions in or about the Premises.

8.    HOLD HARMLESS:

Tenant shall indemnify and hold Landlord harmless from and against any and all claims arising from Tenant's use or occupancy of the Premises or from the conduct of its business or from any activity, work, or things which may be permitted or suffered by Tenant in or about the Premises including all damages, costs, attorney's fees, expenses and liabilities incurred in the defense of any claim or action or proceeding arising therefrom. Except for Landlord's willful or grossly negligent conduct. Tenant hereby assumes all risk of damage to property or injury to person in or about the Premises.

9.    ASSIGNMENT AND SUBLETTING:

Tenant shall not voluntarily or by operation of law assign, transfer, sublet, mortgage, or otherwise transfer or

1

encumber all or any part of Tenant's interest in this Lease or in the Premises without Landlord's prior written consent which consent shall not be unreasonably withheld.

10.    DEFAULT:

It is agreed between the parties hereto that if any rent shall be due hereunder and unpaid, or if Tenant shall default and breach any other covenant or provision of the Lease, then the Landlord, after giving the proper notice required by law, may re-enter the Premises and remove any property and any and all persons there from in the manner allowed by law. The Landlord may, at his option, either maintain this Lease in full force and effect and recover the rent and other charges as they become due or, in the alternative, terminate this Lease. In addition, the Landlord may recover all rentals and any other damages and pursue any other rights and remedies which the Landlord may have against the Tenant by reason of such default as provided by law.

11.    SURRENDER:

On the last day of the term of this Lease, Tenant shall surrender the Premises to Landlord in good condition, broom clean, ordinary wear and tear and damage by fire and the elements excepted N/A.

12.    HOLDING OVER:

If Tenant, with the Landlord's consent, remains in possession of the Premises after expiration or termination of the term of this Lease, such possession by Tenant shall be deemed to be a tenancy from month-to-month at a rental in the amount of the last monthly rental plus all other charges payable hereunder, and upon all the provisions of this Lease applicable to such a month-to-month tenancy.

13.    BINDING ON SUCCESSORS AND ASSIGNS:

Each provision of this Lease performable by Tenant shall be deemed both a covenant and a condition. The terms, conditions and covenants of this Lease shall be binding upon and shall inure to the benefit of each of the parties hereto, their heirs, personal representatives, successors and assigns.

14.    NOTICES:

Whenever under this Lease a provision is made for any demand, notice or declaration of any kind, it shall be in writing and served either personally or sent by registered or certified United States mail, postage prepaid, addressed at the addresses as set forth below:

TO LANDLORD AT:    12203 Magnolia Avenue, Riverside, CA 92503

TO TENANT AT:    12203 Magnolia Avenue, Riverside, CA 92503

Such notice shall be deemed to be received within forty-eight (48) hours from the time of mailing, if mailed

as provided for in this paragraph.

15.    WAIVERS:

No waiver by Landlord of any provision hereof shall be deemed a waiver of any other provision hereof or of any subsequent breach by Tenant of the same or any other provisions.

16.    TIME:

Time is of the essence of this Lease.
The parties hereto have executed this Lease on the date first above written.

LANDLORD:
**Ben Clymer's The Body Shop Perris LLC**

By: _____
    Randolph Ben Clymer, Managing Member

Date: _____ 6 - 9 - 2016 _____

TENANT:
**Ben Clymer's The Body Shop Perris Inc.**

By: _____
    Randolph Ben Clymer, President & Secretary

Date: _____ 6 - 9 - 2016 _____

EXHIBIT C

**Fill in this information to identify the case:**

Debtor name __Pimlico Ranch, LLC__

United States Bankruptcy Court for the: __CENTRAL DISTRICT OF CALIFORNIA__

Case number (if known) _____

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:    List All Creditors with PRIORITY Unsecured Claims**

1.   Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).

☑ No. Go to Part 2.

☐ Yes. Go to line 2.

**Part 2:    List All Creditors with NONPRIORITY Unsecured Claims**

3.   List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
out and attach the Additional Page of Part 2.

|  | | Amount of claim |
|---|---|---|

**3.1** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$75,000.00**

**Bill Alden**
**30535 Buckboard Lane**
**Sun City, CA 92585**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __2017__

Basis for the claim: __Loan__

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

**3.2** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$250,000.00**

**Fox Glen Family Entertainment**
**121 East Florida St**
**Hemet, CA 92543**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Loan; estimated amount__

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

**3.3** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$110,000.00**

**Michael Murray**
**P.O. Box 52806**
**Riverside, CA 92517**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __2018-2020__

Basis for the claim: __estimated amount; services rendered re development__

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

**3.4** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$45,000.00**

**Mo Jacob Accounting**
**260 El Camino Drive**
**Beverly Hills, CA 90212**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __2016-2020__

Basis for the claim: __Bookkeeping services__

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

| Debtor | Pimlico Ranch, LLC | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $3,000,000.00 |
|---|---|---|---|

**Mr. LightHouse**
**c/o Tom Sardoni**
**3890 11th Street Ste 104**
**Riverside, CA 92501**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Note

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Prime Lending LLC**
**c/o Eli Halavi**
**11040 Santa Monca Blvd., Suite 400**
**Los Angeles, CA 90025**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $200,000.00 |
|---|---|---|---|

**Rasel LTD**
**260 El Camino Drive**
**Beverly Hills, CA 90212**

Date(s) debt was incurred  2016-2019

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Loan

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $30,000.00 |
|---|---|---|---|

**Richard Smith**
**10226 Indiana Ave**
**Riverside, CA 92503**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Services

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $525,000.00 |
|---|---|---|---|

**Richard Smith Sport Bar & Grill**
**10226 Indiana Ave**
**Riverside, CA 92503**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Loan

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.10 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $58,670.00 |
|---|---|---|---|

**Shawn Peukert**
**P.O. Box 1592**
**Wildomar, CA 92595**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Services rendered re development

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.11 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $150,000.00 |
|---|---|---|---|

**Stanley Hills LLC**
**1061 1/2 North Spaulding**
**Los Angeles, CA 90046**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Loan

Is the claim subject to offset? ■ No ☐ Yes

---

**Part 3:    List Others to Be Notified About Unsecured Claims**

**4.** List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

| Debtor | **Pimlico Ranch, LLC** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---|---|

**5. Add the amounts of priority and nonpriority unsecured claims.**

|  |  |  | **Total of claim amounts** |
|---|---|---|---|
| 5a. Total claims from Part 1 | 5a. | $ | 0.00 |
| 5b. Total claims from Part 2 | 5b. + | $ | 4,443,670.00 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $ | 4,443,670.00 |

AMENDED

☑ Check if this is an
amended filing

**Fill in this information to identify the case:**

Debtor name __Pimlico Ranch, LLC__

United States Bankruptcy Court for the: __Central District of California__

Case number (if known): __6:20-bk-14307-SC__     Chapter __11__

## Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases     12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

1. **Does the debtor have any executory contracts or unexpired leases?**

   ☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.

   ☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

2. **List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease**

| 2.1 | State what the contract or lease is for and the nature of the debtor's interest | Executory Contract / Entitlement & Project Manager for development of the real property. Agent | CBM Consulting & Development, Inc. 23565 Cypress Place Quail Valley, CA, 92587 |
| | State the term remaining | Based on completion of project | |
| | List the contract number of any government contract | | |

| 2.2 | State what the contract or lease is for and the nature of the debtor's interest | Executory Contract Development Consultant Agent | Markham Development Strategies, LLC (MDS, LLC) 41593 Winchester Road Suite No. 200 Temecula, CA, 92590 |
| | State the term remaining | Based on completion of project | |
| | List the contract number of any government contract | | |

| 2.3 | State what the contract or lease is for and the nature of the debtor's interest | Executory Contract re Environmental Quality Act Compliance Agent | Tom Dodson & Associates 2150 N Arrowhead Ave San Bernardino, CA, 92405 |
| | State the term remaining | Based on completion of project | |
| | List the contract number of any government contract | | |

| 2.4 | State what the contract or lease is for and the nature of the debtor's interest | Executory Contract Development Services Agent | Michael Murray P.O. Box 52806 Riverside, CA, 92517 |
| | State the term remaining | Based on completion of project | |
| | List the contract number of any government contract | | |

| 2.5 | State what the contract or lease is for and the nature of the debtor's interest | Executory Contract Development Consultants Agent | Lewis Brisbois Bisgaard & Smith LLP 633 W 5th St #4000 Los Angeles, CA, 90071 |
| | State the term remaining | Based on completion of project | |
| | List the contract number of any government contract | | |

AMENDED

| Debtor | Pimlico Ranch, LLC | | Case number (if known) | 6:20-bk-14307-SC |
|---|---|---|---|---|
| | Name | | | |

## Additional Page if Debtor Has More Executory Contracts or Unexpired Leases

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

| List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2._6_**
State what the contract or lease is for and the nature of the debtor's interest

State the term remaining

List the contract number o any government contract

Executory Contract
Engineering consultant
Agent

Based on completion of project

Hunsaker & Associates LA Inc.
26074 Ave Hall
Suite 23
Valencia, CA, 91355

---

**2._7_**
State what the contract or lease is for and the nature of the debtor's interest

State the term remaining

List the contract number of any government contract

Executory Contract
Architect - Product Design
Agent

Based on completion of project

Dave Madden
39739 Ashland Way
Murrieta, CA, 92562

---

**2._____**
State what the contract or lease is for and the nature of the debtor's interest

State the term remaining

List the contract number of any government contract

---

**2._____**
State what the contract or lease is for and the nature of the debtor's interest

State the term remaining

List the contract number of any government contract

---

**2._____**
State what the contract or lease is for and the nature of the debtor's interest

State the term remaining

List the contract number of any government contract

---

**2._____**
State what the contract or lease is for and the nature of the debtor's interest

State the term remaining

List the contract number of any government contract

---

**2._____**
State what the contract or lease is for and the nature of the debtor's interest

State the term remaining

List the contract number of any government contract

Official Form 206G          Schedule G: Executory Contracts and Unexpired Leases          page _2_ of _2_

# EXHIBIT D



**Business Statement**

Account Number:
6681

Statement Period:
Jul 1, 2020
through
Jul 31, 2020

Page 1 of 2

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

5839      MG           S        Y      ST01

000200504 01 SP    000638536106177 S
RANDOLPH B CLYMER
DBA BEN CLYMER'S THE BODY SHOP
PERRIS LLC
1645 MONTE MAR ST
CORONA CA 92881-8800

☎                          *To Contact U.S. Bank*

**24-Hour Business Solutions:**                      1-800-673-3555

**U.S. Bank accepts Relay Calls**

**Internet:**                                usbank.com

## NEWS FOR YOU



Scan here with your phone's camera to download the U.S. Bank Mobile App.

## SILVER BUSINESS CHECKING                                    *Member FDIC*

U.S. Bank National Association                              Account Number        -6681

### Account Summary

|  | # Items |  |  |
|---|---|---|---|
| Beginning Balance on Jul 1 |  | $ | 188,614.88 |
| Customer Deposits | 1 |  | 35,000.00 |
| Other Deposits | 1 |  | 5,000.00 |
| Other Withdrawals | 1 |  | 185,000.00- |
| **Ending Balance on Jul 31, 2020** |  | **$** | **43,614.88** |

### Customer Deposits

| Number | Date | Ref Number | Amount |
|---|---|---|---|
|  | Jul 15 | 8655186423 | 35,000.00 |
|  |  | **Total Customer Deposits** | **$   35,000.00** |

### Other Deposits

| Date | Description of Transaction |  | Ref Number |  | Amount |
|---|---|---|---|---|---|
| Jul 7 | Electronic Deposit | From SBAD TREAS 310 |  | $ | 5,000.00 |
|  | REF=201880154321160N00 | 9101036151 MISC PAYEIDG:3305043173 |  |  |  |
|  |  |  | **Total Other Deposits** | **$** | **5,000.00** |

### Other Withdrawals

| Date | Description of Transaction |  | Ref Number |  | Amount |
|---|---|---|---|---|---|
| Jul 20 | Branch Account Transfer | To Account 157523677126 |  | $ | 185,000.00- |
|  |  |  | **Total Other Withdrawals** | **$** | **185,000.00-** |

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|---|---|---|---|---|---|
| Jul 7 | 193,614.88 | Jul 15 | 228,614.88 | Jul 20 | 43,614.88 |

Balances only appear for days reflecting change.

## ANALYSIS SERVICE CHARGE DETAIL

Account Analysis Activity for: June 2020

| Account Number: | -6681 | $ | 0.00 |
|---|---|---|---|



**BALANCE YOUR ACCOUNT**

To assist you in tracking your bank transactions, use this checklist. As with all statements, we will assume that the balance and transactions shown are correct unless you notify us of an error.

### Outstanding Deposits

| DATE | AMOUNT |
|------|--------|
|      |        |
|      |        |
|      |        |
|      |        |
| TOTAL | $     |

### Outstanding Withdrawals

| DATE | AMOUNT |
|------|--------|
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
| TOTAL | $    |

1. List any deposits that do not appear on your statement in the Outstanding Deposits section at the left. Record the total.

2. Check off in your checkbook register all checks, withdrawals (including Debit Card and ATM) and automatic payments that appear on your statement. Withdrawals that are NOT checked off should be recorded in the Outstanding Withdrawals section at the left. Record the total.

3. Enter the ending balance shown on this statement.          $_____

4. Enter the total deposits recorded in the Outstanding Deposits section.   $_____

5. Total lines 3 and 4.                                          $_____

6. Enter the total withdrawals recorded in the Outstanding Withdrawals section.  $_____

7. Subtract line 6 from line 5. This is your balance.           $_____

8. Enter in your register and subtract from your register balance any checks, withdrawals or other debits (including fees, if any) that appear on your statement but have not been recorded in your register.

9. Enter in your register and add to your register balance any deposits or other credits (including interest, if any) that appear in your statement but have not been recorded in your register.

10. The balance in your register should be the same as the balance shown in #7. If it does not match, review and check all figures used, and check the addition and subtraction in your register. If necessary, review and balance your statement from the previous month.

## IMPORTANT DISCLOSURES TO OUR CONSUMER CUSTOMERS
### In Case of Errors or Questions About Your Checking, Savings, ATM, Debit Card, ACH, Bill Pay and Other Electronic Transfers
If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, we must hear from you no later than 60 days* after we sent you the FIRST statement on which the error or problem appeared. Telephone us at  he number listed on the front of this statement or write to us at U.S. Bank, EP-MN-WS5D, 60 Livingston Ave., St. Paul, MN 55107.
- Tell us your name and account number.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.
We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint. For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint. If we decide to do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it wi hin 10 business days, we may not credit your account.
  *Please note: Paper draft and paper check claims must be disputed within 30 days per Your Deposit Account Agreement.

## IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS
Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the National Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

## CONSUMER BILLING RIGHTS SUMMARY REGARDING YOUR RESERVE LINE
### *What To Do If You Think You Find A Mistake on Your Statement*
If you think there is an error on your statement, write to us at:
U.S. Bank, P.O. Box 3528, Oshkosh, WI 54903-3528.
In your letter, give us the following information:
- *Account information:* Your name and account number.
- *Dollar Amount:* The dollar amount of the suspected error.
- *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.
You must contact us within 60 days after the error appeared on your statement.
You must notify us of any potential errors *in writing.* You may call us, but if you do we are not required to inves igate any potential errors and you may have to pay the amount in question. While we investigate whether or not there has been an error, he following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit balance.

**Reserve Line Balance Computation Method:** To determine your **Balance Subject to Interest Rate,** use the dates and balances provided in the Reserve Line Balance Summary section. The date next to the first Balance Subject to Interest is day one for that balance and is applicable up to (but not including) the date of the next balance (if there is one). We multiply the Balance Subject to Interest by the number of days it is applicable and add them up to get the same number of days in the billing cycle. We then divide the result by the number of billing days in the cycle. This is your **Balance Subject to Interest Rate.** Any unpaid interest charges and unpaid fees are not included in the Balance Subject to Interest. The ***INTEREST CHARGE*** begins from the date of each advance.

## REPORTS TO AND FROM CREDIT BUREAUS FOR RESERVE LINES
We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

## CONSUMER REPORT DISPUTES
We may report information about account activity on consumer and small business deposit accounts and consumer reserve lines to Consumer Reporting Agencies (CRA). As a result, this may prevent you from obtaining services at other financial institutions. If you believe we have inaccurately reported information to a CRA, you may submit a dispute by calling 844.624.8230 or by writing to: U.S. Bank Attn: Consumer Bureau Dispute Handling (CBDH), P.O. Box 3447, Oshkosh, WI 54903-3447. In order for us to assist you with your dispute, you must provide: your name, address and phone number;  he account number; the specific information you are disputing; the explanation of why it is incorrect; and any supporting documentation (e.g., affidavit of identity theft), if applicable.



EQUAL HOUSING
LENDER

Member FDIC



RANDOLPH B CLYMER
DBA BEAUTY'S FREEDOM LLC
PERRIS LLC
1645 MONTE MAR ST
CORONA CA 92881-8800

**Business Statement**

Account Number:
6681

Statement Period:
Jul 1, 2020
through
Jul 31, 2020



Page 2 of 2

| ANALYSIS SERVICE CHARGE DETAIL | | | | (CONTINUED) |
|---|---|---|---|---|
| Analysis Service Charge assessed to | | -6681 | $ | 0.00 |

**Service Activity Detail for Account Number**     **-6681**

| Service | Volume | Avg Unit Price | Total Charge |
|---|---|---|---|
| **Depository Services** | | | |
| Combined Transactions/Items | 1 | | No Charge |
| Subtotal: Depository Services | | | 0.00 |
| Fee Based Service Charges for Account Number | -6681 | $ | 0.00 |

This page intentionally left blank

# EXHIBIT E

## DEMAND TO PAY RENT TO PARTY OTHER THAN LANDLORD
## (SECTION 2938 OF THE CIVIL CODE)

**Tenant**: TODD A. FREALY, Chapter 11 Trustee for Debtor, BEN CLYMER'S THE BODY

SHOP PERRIS, INC. (U.S. Bankruptcy Court, Central District, California, Case No. 6:20-bk-

14798-SC)

**Property Occupied By Tenant:** 12203 Magnolia Ave., Riverside, CA 92503

**Landlord**: BEN CLYMER'S THE BODY SHOP PERRIS, LLC

**Secured Party**: US METRO BANK

**Address of Secured Party:** c/o Heesok Park, Park & Lim, 3530 Wilshire Blvd., Suite 1300, Los

Angeles, CA 90010

    The secured party named above is the assignee of leases, rents, issues, and profits under
the Assignment of Rents, dated June 24, 2016, and recorded at Doc # 2016-0276954, in the
official records of Riverside County California and the Deed of Trust, dated June 24, 2016, and
recorded as Doc # 2016-0276953, in said office. You may request a copy of the assignments
from the secured party at Park & Lim, Attn: Heesok Park, 3530 Wilshire Blvd., Suite 1300, Los
Angeles, CA 90010.

    THIS NOTICE AFFECTS YOUR LEASE OR RENTAL AGREEMENT RIGHTS AND
OBLIGATIONS. YOU ARE THEREFORE ADVISED TO CONSULT AN ATTORNEY
CONCERNING THOSE RIGHTS AND OBLIGATIONS IF YOU HAVE ANY QUESTIONS
REGARDING YOUR RIGHTS AND OBLIGATIONS UNDER THIS NOTICE.

    IN ACCORDANCE WITH SUBDIVISION (C) OF SECTION 2938 OF THE CIVIL
CODE, YOU ARE HEREBY DIRECTED TO PAY TO THE SECURED PARTY, US METRO
BANK, AT Park & Lim, Attn: Heesok Park,3530 Wilshire Blvd., Suite 1300, Los Angeles, CA
90010, ALL RENTS UNDER YOUR LEASE OR OTHER RENTAL AGREEMENT WITH
THE LANDLORD OR PREDECESSOR IN INTEREST OF LANDLORD, FOR THE
OCCUPANCY OF THE PROPERTY AT 12203 Magnolia Ave., Riverside, CA 92503 WHICH
ARE PAST DUE ANDPAYABLE ON THE DATE YOU RECEIVE THIS DEMAND, AND
ALL RENTS COMING DUE UNDER THE LEASE OR OTHER RENTALAGREEMENT
FOLLOWING THE DATE YOU RECEIVE THIS DEMAND UNLESS YOU HAVE AND IN
A MANNER NOT INCONSISTENT WITH THE AGREEMENT BETWEEN YOU AND THE
LANDLORD.  IN THIS CASE,THIS DEMAND NOTICE SHALL REQUIRE YOU TO PAY
TO THE SECURED PARTY, US METRO BANK, ALL RENTS THAT COME DUE
FOLLOWING THE DATE OF THE PAYMENTTO THE LANDLORD. IF YOU PAY THE
RENT TO THE UNDERSIGNED SECURED PARTY, US METRO BANK, c/o Park & Lim,

1

Attn: Heesok Park, IN ACCORDANCE WITH THISNOTICE, YOU DO NOT HAVE TO PAY THE RENT TO THE LANDLORD. YOU WILL NOT BE SUBJECT TO DAMAGES OR OBLIGATED TO PAYRENT TO THE SECURED PARTY IF YOU HAVE PREVIOUSLY RECEIVED A DEMAND OF THIS TYPE FROM A DIFFERENT SECURED PARTY.

IF YOU PAY RENT TO THE LANDLORDTHAT BY THE TERMS OF THIS DEMAND YOU ARE REQUIRED TO PAY TO THE SECURED PARTY, YOU MAY BE SUBJECT TO DAMAGES INCURRED BY THE SECURED PARTY BY REASON OF YOUR FAILURETO COMPLY WITH THIS DEMAND, AND YOU MAY NOT BE DISCHARGED FROM YOUR OBLIGATION TO PAY THAT RENT TOTHE SECURED PARTY YOU WILL NOT BE SUBJECT TO THOSE DAMAGES OR OBLIGATED TO PAY THAT RENT TO THE SECURED PARTY IF YOU HAVE PREVIOUSLY RECEIVED A DEMAND OF THISTYPE FROM A DIFFERENT ASSIGNEE.

Your obligation to pay rent under this demand shall continue until you receive either (1) a written notice from a court directing you to pay the rent in a mannerprovided therein, or (2) a written notice from the secured party named above canceling this demand.

The undersigned hereby certifies, under penalty of perjury, that the undersigned is an authorized officer or agent of the secured party and that the secured party is the assignee, or the current successor to the assignee, under an assignmentof leases, rents, issues, or profits executed by the landlord, or a predecessor in interest, that is being enforced pursuant to and in accordance with Section 2938 of the Civil Code.

Executed at Los Angeles, California, this 11th day of August, 2020.

US METRO BANK

By:

Heesok Park, its authorized Attorney

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is: 3530 Wilshire Boulevard, Suite 1300, Los Angeles, California 90010

On **August 11, 2020**, I served the foregoing document described as: **DEMAND TO PAY RENT TO PARTY OTHER THAN LANDLORD (SECTION 2938 OF THE CIVIL CODE)** on the interested parties in this action by placing two true copies thereof enclosed in two separate sealed envelopes for each party listed below, addressed as follows:

Todd A. Frealy, Esq.
3403 Tenth St., Suite 709
Riverside, CA 92501
(Ch. 11 Trustee, Tenant, Ben Clymer's The Body Shop, Inc.)

Monica Y. Kim, Esq.
Levine, Neale, Bender, Yoo & Brill
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067
(Counsel for Ch. 11 Trustee)

Randolph Ben Clymer, President
Ben Clymer's The Body Shop, Inc.
12203 Magnolia Ave.
Riverside, CA 92503

Robert M. Yaspan, Esq.
21700 Oxnard St., Suite 1750
Woodland Hills, CA 91367
(Former counsel, Ben Clymer's The Body Shop, Inc.0

Randolph Ben Clymer, Managing Member
Ben Clymer's The Body Shop, LLC
12203 Magnolia Ave.
Riverside, CA 92503
(Landlord, assignor)

Fahim Farivar, Esq.
Farivar Law Firm, APC
18345 Ventura Blvd., Suite 518
Tarzana, CA 91356
(Attorney for Landlord, Ben Clymer's The Body Shop, LLC)

On the date above set forth, I placed in the United States mail, with the required postage affixed thereon, two copies of the above referenced document addressed to each of the above

referenced recipients, with one sealed envelope addressed to each recipient and mailed Certified Mail, Return Receipt Requested, and another sealed envelope addressed to each recipient sent by First Class U.S. Mail, no receipt requested.

Executed on **August 11, 2020**, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Jacie Choi

# EXHIBIT F



9860 Garden Grove Blvd., Garden Grove, CA 92844                          Tel 714-620-8888

Dear SBA Loan Customers,

Per Section 1112 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the U.S. Small Business Administration (SBA) is providing a financial reprieve to small businesses during the COVID-19 pandemic. As part of the coronavirus debt relief efforts, the SBA will pay 6 months of principal, interest, and any associated fees that borrowers owe for all current 7(a) in regular servicing status beginning with the first payment due after March 27, 2020. This relief is not available for Paycheck Protection Program loans or Economic Injury Disaster loans. You do not need to apply for this assistance as it will be automatically provided and applied towards the existing SBA 7(a) loans.

In order to cease Borrower's payment while SBA is making the payments on their behalf, all loans currently on automatic payment set-up will be disabled without further notice. However, the automatic payment set-up will be reinstated after the SBA's Payment Relief ends.

If you have any question, please do not hesitate to contact us at (714) 620-8888. We always appreciate your business.

EXHIBIT G

# PERRIS LLC.

## PERRIS LLC IN THERE ACCOUNTS AT BBVD, US, AND CHASE BANK HAS TRANSFER TO PERRIS INC.

**BBVD PERRIS LLC.**

**TRANSFER TO PERRIS INC.**          $ 2,757,048.15

**US PERRIS LLC.**

**TRANSFER TO PERRIS INC.**          $    816,037.88

**CHASE PERRIS LLC.**

**TRANSFER TO PERRIS INC.**          $     62,400.00

| TOTAL AMOUNT PERRIS INC. OWES PERRIS LLC. |
| :---: |
| **$ 3,635,486.03** |

| | BBVD BANK | 2925 | | |
|---|---|---|---|---|
| | PERRIS LLC | | | |
| | JANUARY 2016 | | | |
| 3/8/2016 | PERRIS INC. BBVD GEN. 2994 | | | $ 27,586.24 |
| 4/19/2016 | PERRIS INC. BBVD GEN. 2994 | | | $ 7,500.00 |
| 4/19/2016 | PERRIS INC. BBVD GEN. 2994 | | | $ 4,500.00 |
| 5/6/2016 | PERRIS INC. 0175 | | | $ 10,000.00 |
| 10/11/2016 | PERRIS INC. 8642 | | | $ 70,000.00 |
| 10/21/2016 | PERRIS INC. 0175 | | | $ 35,000.00 |
| | | | | |
| 3/11/2016 | TRANS TO PERRIS INC. 2994 | $ 30,000.00 | | |
| 4/19/2016 | TRANS TO PERRIS INC. 2994 | $ 7,500.00 | | |
| 4/19/2016 | TRANS TO PERRIS INC. 2994 | $ 4,500.00 | | |
| 5/16/2016 | TRANS PERRIS INC. 8642 | $ 20,600.00 | | |
| 5/17/2016 | TRANS PERRIS INC. 8642 | $ 186,000.00 | | |
| 5/19/2016 | TRANS TO PERRIS INC. 2994 | $ 85,000.00 | | |
| 5/27/2016 | TRANS PERRIS INC. 8642 | $ 100,000.00 | | |
| 6/13/2016 | TRANS PERRIS INC. 8642 | $ 95,901.57 | | |
| 6/13/2016 | TRANS PERRIS INC. 8642 | $ 5,900.00 | | |
| 7/8/2016 | TRANS TO PERRIS INC. 2994 | $ 70,000.00 | | |
| 7/8/2016 | TRANS TO PERRIS INC. 2994 | $ 30,000.00 | | |
| 7/20/2016 | TRANS PERRIS INC. 8642 | $ 85,000.00 | | |
| 7/25/2016 | TRANS PERRIS INC. 8642 | $ 20,000.00 | | |
| 7/26/2016 | TRANS PERRIS INC. 8642 | $ 100,000.00 | | |
| 7/27/2016 | TRANS TO PERRIS INC. 2994 | $ 100,000.00 | | |
| 7/28/2016 | TRANS TO PERRIS INC. 2994 | $ 50,000.00 | | |
| 7/29/2016 | TRANS TO PERRIS INC. 2994 | $ 150,000.00 | | |
| 8/2/2016 | TRANS TO PERRIS INC. 2994 | $ 50,000.00 | | |
| 8/8/2016 | TRANS TO PERRIS INC. 2994 | $ 30,000.00 | | |
| 8/11/2016 | TRANS TO PERRIS INC. 2994 | $ 60,000.00 | | |
| 8/15/2016 | TRANS TO PERRIS INC. 2994 | $ 39,182.82 | | |
| 8/16/2016 | TRANS TO PERRIS INC. 2994 | $ 75,000.00 | | |
| 8/23/2016 | TRANS TO PERRIS INC. 2994 | $ 200,000.00 | | |
| 8/25/2016 | TRANS TO PERRIS INC. 2994 | $ 30,000.00 | | |
| 8/26/2016 | TRANS TO PERRIS INC. 2994 | $ 25,000.00 | | |
| 8/26/2016 | TRANS TO PERRIS INC. 2994 | $ 100,000.00 | | |

| Date | Description | Amount | |
|---|---|---|---|
| 9/8/2016 | TRANS TO PERRIS INC.  2994 | $ 25,000.00 | |
| 9/9/2016 | TRANS TO PERRIS INC.  2994 | $ 200,000.00 | |
| 9/15/2016 | TRANS TO PERRIS INC.  2994 | $ 50,000.00 | |
| 9/16/2016 | TRANS TO PERRIS INC.  2994 | $ 115,000.00 | |
| 9/27/2016 | TRANS TO PERRIS INC.  2994 | $ 32,000.00 | |
| 9/27/2016 | TRANS TO PERRIS INC.  2994 | $ 90,050.00 | |
| 10/7/2016 | TRANS TO PERRIS INC.  2994 | $ 25,000.00 | |
| 10/7/2016 | TRANS TO PERRIS INC.  2994 | $ 270,000.00 | |
| 10/11/2016 | TRANS TO PERRIS INC.  2994 | $ 70,000.00 | |
| 10/11/2016 | TRANS PERRIS INC.  8642 | $ 70,000.00 | |
| 10/21/2016 | TRANS TO PERRIS INC.  2994 | $ 35,000.00 | |
| 10/27/2016 | TRANS TO PERRIS INC.  2994 | $ 100,000.00 | |
| 12/6/2016 | TRANS TO PERRIS INC.  2994 | $ 50,000.00 | |
| 12/9/2016 | TRANS TO PERRIS INC.  2994 | $ 30,000.00 | |
| | | | |
| | | $ 2,911,634.39 | $ 154,586.24 |
| | | | |
| | PERRIS INC. OWES PERRIS INC. | $ 2,757,048.15 | |

Page 2 of 3
Primary Account:    2925
Beginning March 1, 2016 - Ending March 31, 2016

31

**BBVA** Compass

# CLEARCHOICE FOR BUSINESS

Account Number: ███ 2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Activity Summary

| | |
|---|---|
| Beginning Balance on 3/1/16 | $6,656.14 |
| Deposits/Credits (3) | + $50,246.41 |
| Withdrawals/Debits (4) | - $44,626.34 |
| Ending Balance on 3/31/16 | $12,276.21 |

## Transaction History

| Date | Check/Serial # | Description | Deposits/Credits | Withdrawals/Debits | End of Day Balance |
|---|---|---|---|---|---|
| 3/8 | | BRANCH DEPOSIT | $15,000.00 | | |
| 3/8 | | OUTGOING WIRE REF  20160308F2QCZ60C001159 BNF Farzad Halawi Brok | | $14,583.34 | |
| 3/8 | | ONLINE BANKING TRANSFER FR ACCT *2994 | $27,586.24 | | $34,659.04 |
| 3/11 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $30,000.00 | $4,659.04 |
| 3/15 | | FEB PAPER STATEMENT FEE | | $3.00 | |
| 3/15 | | FEB OUTGOING WIRE TRANSFER | | $40.00 | $4,616.04 |
| 3/21 | | BRANCH DEPOSIT | $7,660.17 | | $12,276.21 |
| Ending Balance on 3/31 | | | | | $12,276.21 |
| Totals | | | $50,246.41 | $44,626.34 | |

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
* The Date provided is the business day that the transaction is processed.

Page 2 of 3
Primary Account: 2925
Beginning April 1, 2016 - Ending April 30, 2016                30

**BBVA** Compass

# CLEARCHOICE FOR BUSINESS

Account Number: 2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Activity Summary

| | |
|---|---|
| Beginning Balance on 4/1/16 | $12,276.21 |
| Deposits/Credits (4) | + $21,959.53 |
| Withdrawals/Debits (5) | - $22,023.00 |
| Ending Balance on 4/30/16 | $12,212.74 |

## Transaction History

| Date * | Check/ Serial # | Description | Deposits/ Credits | Withdrawals/ Debits | End of Day Balance |
|---|---|---|---|---|---|
| 4/6 | | BRANCH DEPOSIT | $5,600.00 | | $17,876.21 |
| 4/15 | | ONLINE BANKING TRANSFER TO ACCT *8249 | | $10,000.00 | |
| 4/15 | | MAR PAPER STATEMENT FEE | | $3.00 | |
| 4/15 | | MAR OUTGOING WIRE TRANSFER | | $20.00 | $7,853.21 |
| 4/19 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $7,500.00 | |
| 4/19 | | BRANCH DEPOSIT | $4,359.53 | | |
| 4/19 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $4,500.00 | |
| 4/19 | | ONLINE BANKING TRANSFER FR ACCT *2994 | $7,500.00 | | |
| 4/19 | | ONLINE BANKING TRANSFER FR ACCT *2994 | $4,500.00 | | $12,212.74 |
| Ending Balance on 4/30 | | | | | $12,212.74 |
| Totals | | | $21,959.53 | $22,023.00 | |

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
* The Date provided is the business day that the transaction is processed.

Page 2 of 4
Primary Account: ▓▓2925
Beginning May 1, 2016 - Ending May 31, 2016                    31

# CLEARCHOICE FOR BUSINESS

Account Number: ▓▓2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Account Information

Reminder: Your account is subject to a Deposit Correction Fee to correct out-of-balance deposits. Please refer to the Miscellaneous Fee section in your Non-Consumer Deposit Account Terms and Conditions for the fee amount and the Services Charges; Error Correction paragraph of the Withdrawals section of the Non-Consumer Deposit Account Agreement for additional details. If you have any questions, please contact 1-800-COMPASS.

## Change In Terms

The following fee changes will go into effect July 1, 2016:
- BBVA Compass fee to use Another Bank's ATM will be $2.50
- Incoming Domestic Wire Transfer fee will be $15.00
- Incoming Domestic Wire Transfer fee with confirmation fax/email fee will be $16.00
- Incoming Domestic Wire Transfer fee with confirmation phone fee will be $18.00
- Outgoing (Non-Repetitive) Wire Transfer fee will be $25.00
- Outgoing (Repetitive) Wire Transfer fee will be $20.00
- Outgoing (Repetitive) Wire Transfer with confirmation fee will be $26.00
- Incoming International Wire Transfer fee will be $15.75
- Deposited Item Returned fee will be $12.00
- Rerun Deposited Item fee will be $9.00

If you have any questions about these changes to your account, please call us at 800-852-0803 or visit your nearest banking center.

## Activity Summary

| | |
|---|---|
| Beginning Balance on 5/1/16 | $12,212.74 |
| Deposits/Credits (2) | + $610,000.00 |
| Withdrawals/Debits (7) | - $411,186.34 |
| Ending Balance on 5/31/16 | $211,026.40 |

## Transaction History

| Date * | Check/ Serial # | Description | Deposits/ Credits | Withdrawals/ Debits | End of Day Balance |
|---|---|---|---|---|---|
| 5/4 | | ONLINE BANKING TRANSFER TO ACCT *8249 | | $5,000.00 | $7,212.74 |
| 5/6 | | ONLINE BANKING TRANSFER FR ACCT *0175 | $10,000.00 | | |
| 5/6 | | OUTGOING WIRE REF 20160506F2QCZ60C002776 BNF FARZAD HALAWI BROK | | $14,583.34 | $2,629.40 |
| 5/13 | | INCOMING WIRE REF 20160513F2QCZ60C00292605131515FT03 ORG CLOSING AGENTS INC | $600,000.00 | | $602,629.40 |
| 5/16 | | APR PAPER STATEMENT FEE | | $3.00 | |
| 5/16 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $20,600.00 | $582,026.40 |
| 5/17 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $186,000.00 | $396,026.40 |
| 5/19 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $85,000.00 | $311,026.40 |

Page 2 of 4

Primary Account.  [redacted] 2925
Beginning August 1, 2016 - Ending August 31, 2016                    31

# CLEARCHOICE FOR BUSINESS

Account Number: [redacted] 2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Account Information

### Change In Terms

Effective October 1, 2016, a Branch Cash Deposit Fee of $0.003/$1.00 will apply for each dollar deposited above the monthly limit on your account. For example, if you deposit $1,000 more than your monthly limit, you will be charged a $3.00 Branch Cash Deposit Fee.

As a reminder, a standard feature of your account is the receipt of up to $10,000 in cash processing per month at no charge. Your account is also entitled to two Premium Features per month at no additional charge; one of the features you may choose is an additional $5,000 per month in cash processing.

If you have any questions about this change, please call us at 800-852-0803 or visit your nearest banking center.

## Activity Summary

| | |
|---|---|
| Beginning Balance on 8/1/16 | $206,319.12 |
| Deposits/Credits (4) | + $562,306.09 |
| Withdrawals/Debits (13) | − $663,398.64 |
| Ending Balance on 8/31/16 | $105,226.57 |

## Transaction History

| Date * | Check/ Serial # | Description | Deposits/ Credits | Withdrawals/ Debits | End of Day Balance |
|---|---|---|---|---|---|
| 8/2 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $50,000.00 | $156,319.12 |
| 8/5 | | ONLINE BANKING TRANSFER TO ACCT *8249 | | $15,000.00 | |
| 8/5 | | BRANCH DEPOSIT | $23,123.27 | | $164,442.39 |
| 8/8 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $30,000.00 | $134,442.39 |
| 8/11 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $60,000.00 | $74,442.39 |
| 8/15 | | INCOMING WIRE REF 20160815F2QCZ60C00268708151507FT03 ORG CLOSING AGENTS INC | $300,000.00 | | |
| 8/15 | | JUL PAPER STATEMENT FEE | | $3.00 | |
| 8/15 | | JUL INCOMING WIRE TRANSFER | | $30.00 | |
| 8/15 | | ONLINE BANKING TRANSFER TO ACCT *8249 | | $39,182.82 | |
| 8/15 | | ONLINE BANKING TRANSFER FR ACCT *8249 | $39,182.82 | | |
| 8/15 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $39,182.82 | $335,226.57 |
| 8/16 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $75,000.00 | $260,226.57 |
| 8/23 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $200,000.00 | $60,226.57 |
| 8/25 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $30,000.00 | |
| 8/25 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $25,000.00 | $5,226.57 |
| 8/26 | | INCOMING WIRE REF 20160826F2QCZ60C00339808261603FT03 ORG CLOSING AGENTS INC | $200,000.00 | | |

30488-74903-149806

Page 2 of 4
Primary Account: ▮ 2925
Beginning October 1, 2016 - Ending October 31, 2016                    31



# CLEARCHOICE FOR BUSINESS

Account Number: ▮ 2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Account Information

We have updated the Treasury Management Service Agreement for the following product sections: Account Reconciliation Services, Controlled Disbursement Services, Image Cash Letter Services, Compass Remote Deposit Online, and Zero Balance Account Services.

Please review those sections of the Treasury Management Agreement online and print a complete copy for your records. These terms and condition will become effective as of January 1, 2017. A summary of those updates can be found on the second page of the Treasury Management Agreement.  All other terms and conditions of the Treasury Management Agreement will continue in full force and effect. You can find a current version of the agreement by going to:
http://www.bbvacompass.com/commercial/treasury-management/resource-central/

The user ID is "treasury" and the password is "management."

## Activity Summary

| | |
|---|---|
| Beginning Balance on 10/1/16 | $193,143.57 |
| Deposits/Credits (3) | + $405,000.00 |
| Withdrawals/Debits (8) | - $570,033.00 |
| **Ending Balance on 10/31/16** | **$28,110.57** |

## Transaction History

| Date * | Check/ Serial # | Description | Deposits/ Credits | Withdrawals/ Debits | End of Day Balance |
|---|---|---|---|---|---|
| 10/7 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $25,000.00 | |
| 10/7 | | INCOMING WIRE REF 20161007F2QCZ60C00357410071631FT03 ORG CLOSING AGENTS INC | $300,000.00 | | |
| 10/7 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $270,000.00 | $198,143.57 |
| 10/11 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $70,000.00 | |
| 10/11 | | ONLINE BANKING TRANSFER FR ACCT *8642 | $70,000.00 | | |
| 10/11 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $70,000.00 | $128,143.57 |
| 10/17 | | SEP PAPER STATEMENT FEE | | $3.00 | |
| 10/17 | | SEP INCOMING WIRE TRANSFER | | $30.00 | $128,110.57 |
| 10/21 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $35,000.00 | |
| 10/21 | | ONLINE BANKING TRANSFER FR ACCT *0175 | $35,000.00 | | $128,110.57 |
| 10/27 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $100,000.00 | $28,110.57 |
| Ending Balance on 10/31 | | | | | $28,110.57 |

**Totals**                                                    **$405,000.00**    **$570,033.00**

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
 * The Date provided is the business day that the transaction is processed.

25838-65088-130176

Page 2 of 3
Primary Account: ████ 2925
Beginning March 1, 2016 - Ending March 31, 2016

31

**BBVA** Compass

# CLEARCHOICE FOR BUSINESS
Account Number: ████ 2926 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Activity Summary

| | |
|---|---|
| Beginning Balance on 3/1/16 | $6,856.14 |
| Deposits/Credits (3) | + $50,248.41 |
| Withdrawals/Debits (4) | - $44,828.34 |
| Ending Balance on 3/31/16 | $12,276.21 |

## Transaction History

| Date * | Check/ Serial # | Description | Deposits/ Credits | Withdrawals/ Debits | End of Day Balance |
|---|---|---|---|---|---|
| 3/8 | | BRANCH DEPOSIT | $15,000.00 | | |
| 3/8 | | OUTGOING WIRE REF 20160308F2QCZ60C001159 BNF Farzad Halawi Brok | | $14,563.34 | |
| 3/8 | | ONLINE BANKING TRANSFER FR ACCT *2994 | $27,588.24 | | $34,659.04 |
| 3/11 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $30,000.00 | $4,659.04 |
| 3/15 | | FEB PAPER STATEMENT FEE | | $3.00 | |
| 3/15 | | FEB OUTGOING WIRE TRANSFER | | $40.00 | $4,616.04 |
| 3/21 | | BRANCH DEPOSIT | $7,660.17 | | $12,276.21 |
| Ending Balance on 3/31 | | | | | $12,276.21 |
| Totals | | | $50,248.41 | $44,828.34 | |

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
* The Date provided is the business day that the transaction is processed.

Page 2 of 3
Primary Account: 2925
Beginning April 1, 2016 - Ending April 30, 2016

**BBVA** Compass

30

# CLEARCHOICE FOR BUSINESS
Account Number: 2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Activity Summary

| | |
|---|---|
| Beginning Balance on 4/1/16 | $12,276.21 |
| Deposits/Credits (4) | + $21,959.53 |
| Withdrawals/Debits (5) | - $22,023.00 |
| Ending Balance on 4/30/16 | $12,212.74 |

## Transaction History

| Date * | Check/ Serial # | Description | Deposits/ Credits | Withdrawals/ Debits | End of Day Balance |
|---|---|---|---|---|---|
| 4/6 | | BRANCH DEPOSIT | $5,600.00 | | $17,876.21 |
| 4/15 | | ONLINE BANKING TRANSFER TO ACCT *8249 | | $10,000.00 | |
| 4/15 | | MAR PAPER STATEMENT FEE | | $3.00 | |
| 4/15 | | MAR OUTGOING WIRE TRANSFER | | $20.00 | $7,853.21 |
| 4/19 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $7,500.00 | |
| 4/19 | | BRANCH DEPOSIT | $4,359.53 | | |
| 4/19 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $4,500.00 | |
| 4/19 | | ONLINE BANKING TRANSFER FR ACCT *2994 | $7,500.00 | | |
| 4/19 | | ONLINE BANKING TRANSFER FR ACCT *2994 | $4,500.00 | | $12,212.74 |
| Ending Balance on 4/30 | | | | | $12,212.74 |
| Totals | | | $21,959.53 | $22,023.00 | |

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
* The Date provided is the business day that the transaction is processed.

Page 2 of 4
Primary Account ████ 2925
Beginning May 1, 2016 - Ending May 31, 2016                    31

# CLEARCHOICE FOR BUSINESS
Account Number: ████ 2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Account Information

Reminder: Your account is subject to a Deposit Correction Fee to correct out-of-balance deposits. Please refer to the Miscellaneous Fee section in your Non-Consumer Deposit Account Terms and Conditions for the fee amount and the Services Charges; Error Correction paragraph of the Withdrawals section of the Non-Consumer Deposit Account Agreement for additional details. If you have any questions, please contact 1-800-COMPASS.

## Change In Terms

The following fee changes will go into effect July 1, 2016:
- BBVA Compass fee to use Another Bank's ATM will be $2.50
- Incoming Domestic Wire Transfer fee will be $15.00
- Incoming Domestic Wire Transfer fee with confirmation fax/email fee will be $16.00
- Incoming Domestic Wire Transfer fee with confirmation phone fee will be $18.00
- Outgoing (Non-Repetitive) Wire Transfer fee will be $25.00
- Outgoing (Repetitive) Wire Transfer fee will be $20.00
- Outgoing (Repetitive) Wire Transfer with confirmation fee will be $26.00
- Incoming International Wire Transfer fee will be $15.75
- Deposited Item Returned fee will be $12.00
- Rerun Deposited Item fee will be $9.00

If you have any questions about these changes to your account, please call us at 800-852-0803 or visit your nearest banking center.

## Activity Summary

| | |
|---|---|
| Beginning Balance on 5/1/16 | $12,212.74 |
| Deposits/Credits (2) | + $610,000.00 |
| Withdrawals/Debits (7) | - $411,186.34 |
| Ending Balance on 5/31/16 | $211,026.40 |

## Transaction History

| Date * | Check/ Serial # | Description | Deposits/ Credits | Withdrawals/ Debits | End of Day Balance |
|---|---|---|---|---|---|
| 5/4 | | ONLINE BANKING TRANSFER TO ACCT *8249 | | $5,000.00 | $7,212.74 |
| 5/6 | | ONLINE BANKING TRANSFER FR ACCT *0175 | $10,000.00 | | |
| 5/6 | | OUTGOING WIRE REF 20160506F2QCZ60C002776 BNF FARZAD HALAWI BROK | | $14,583.34 | $2,629.40 |
| 5/13 | | INCOMING WIRE REF 20160513F2QCZ60C00292605131515FT03 ORG CLOSING AGENTS INC | $600,000.00 | | $602,629.40 |
| 5/16 | | APR PAPER STATEMENT FEE | | $3.00 | |
| 5/16 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $20,600.00 | $582,026.40 |
| 5/17 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $186,000.00 | $396,026.40 |
| 5/19 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $85,000.00 | $311,026.40 |

35997-88098-176196



Page 3 of 4
Primary Account: [REDACTED]2925
Beginning May 1, 2016 - Ending May 31, 2016                 31

**BBVA** Compass

| Date * | Check/<br>Serial # | Description | Deposits/<br>Credits | Withdrawals/<br>Debits | End of Day<br>Balance |
|---|---|---|---|---|---|
| 5/27 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $100,000.00 | $211,026.40 |
| Ending Balance on 5/31 | | | | | **$211,026.40** |
| **Totals** | | | **$610,000.00** | **$411,186.34** | |

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
 * The Date provided is the business day that the transaction is processed.

Page 2 of 3
Primary Account 2925
Beginning June 1, 2016 - Ending June 30, 2016                    30



# CLEARCHOICE FOR BUSINESS

Account Number: 2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Account Information

Reminder: Your account is subject to a Deposit Correction Fee to correct out-of-balance
deposits. Please refer to the Miscellaneous Fee section in your Non-Consumer Deposit
Account Terms and Conditions for the fee amount and the Services Charges; Error
Correction paragraph of the Withdrawals section of the Non-Consumer Deposit Account
Agreement for additional details. If you have any questions, please contact
1-800-COMPASS.

## Activity Summary

| | |
|---|---|
| Beginning Balance on 6/1/16 | $211,026.40 |
| Deposits/Credits (0) | + $0.00 |
| Withdrawals/Debits (8) | - $149,684.28 |
| Ending Balance on 6/30/16 | $61,342.12 |

## Transaction History

| Date * | Check/Serial # | Description | Deposits/Credits | Withdrawals/Debits | End of Day Balance |
|---|---|---|---|---|---|
| 6/1 | | ONLINE BANKING TRANSFER TO ACCT *8249 | | $15,000.00 | $196,026.40 |
| 6/2 | | ONLINE BANKING TRANSFER TO ACCT *8249 | | $10,000.00 | $186,026.40 |
| 6/10 | | OUTGOING WIRE REF 20160610F2QCZ60C003001 BNF FARZAD HALAWI BROK | | $22,847.21 | $163,179.19 |
| 6/13 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $95,901.57 | |
| 6/13 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $5,900.00 | $61,377.62 |
| 6/15 | | MAY PAPER STATEMENT FEE | | $3.00 | |
| 6/15 | | MAY INCOMING WIRE TRANSFER | | $12.50 | |
| 6/15 | | MAY OUTGOING WIRE TRANSFER | | $20.00 | $61,342.12 |
| Ending Balance on 6/30 | | | | | $61,342.12 |
| **Totals** | | | **$0.00** | **$149,684.28** | |

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
* The Date provided is the business day that the transaction is processed.

26266-57924-1-15848

# CLEARCHOICE FOR BUSINESS

Account Number: ████2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Activity Summary

| | |
|---|---:|
| Beginning Balance on 7/1/16 | $61,342.12 |
| Deposits/Credits (2) | + $750,000.00 |
| Withdrawals/Debits (10) | - $605,023.00 |
| **Ending Balance on 7/31/16** | **$206,319.12** |

## Transaction History

| Date * | Check/Serial # | Description | Deposits/Credits | Withdrawals/Debits | End of Day Balance |
|---|---|---|---:|---:|---:|
| 7/7 | | INCOMING WIRE REF 20160707F2QCZ60C00024707070733FT03 ORG CLOSING AGENTS INC | $250,000.00 | | $311,342.12 |
| 7/8 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $70,000.00 | |
| 7/8 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $30,000.00 | $211,342.12 |
| 7/15 | | JUN PAPER STATEMENT FEE | | $3.00 | |
| 7/15 | | JUN OUTGOING WIRE TRANSFER | | $20.00 | $211,319.12 |
| 7/20 | | INCOMING WIRE REF 20160720F2QCZ60C00178907201313FT03 ORG CLOSING AGENTS INC | $500,000.00 | | |
| 7/20 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $85,000.00 | $626,319.12 |
| 7/25 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $20,000.00 | $606,319.12 |
| 7/26 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $100,000.00 | $506,319.12 |
| 7/27 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $100,000.00 | $406,319.12 |
| 7/28 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $50,000.00 | $356,319.12 |
| 7/29 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $150,000.00 | $206,319.12 |
| Ending Balance on 7/31 | | | | | **$206,319.12** |
| **Totals** | | | **$750,000.00** | **$605,023.00** | |

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
* The Date provided is the business day that the transaction is processed.

48606-113983-227966

Page 2 of 4
Primary Account: ____2925
Beginning August 1, 2016 - Ending August 31, 2016                    31



# CLEARCHOICE FOR BUSINESS

Account Number ____2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Account Information

## Change In Terms

Effective October 1, 2016, a Branch Cash Deposit Fee of $0.003/$1.00 will apply for each dollar deposited above the monthly limit on your account. For example, if you deposit $1,000 more than your monthly limit, you will be charged a $3.00 Branch Cash Deposit Fee.

As a reminder, a standard feature of your account is the receipt of up to $10,000 in cash processing per month at no charge. Your account is also entitled to two Premium Features per month at no additional charge; one of the features you may choose is an additional $5,000 per month in cash processing.

If you have any questions about this change, please call us at 800-852-0803 or visit your nearest banking center.

## Activity Summary

| | |
|---|---|
| Beginning Balance on 8/1/16 | $206,319.12 |
| Deposits/Credits (4) | + $562,306.09 |
| Withdrawals/Debits (13) | - $663,398.64 |
| Ending Balance on 8/31/16 | $105,226.57 |

## Transaction History

| Date * | Check/ Serial # | Description | Deposits/ Credits | Withdrawals/ Debits | End of Day Balance |
|---|---|---|---|---|---|
| 8/2 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $50,000.00 | $156,319.12 |
| 8/5 | | ONLINE BANKING TRANSFER TO ACCT *8249 | | $15,000.00 | |
| 8/5 | | BRANCH DEPOSIT | $23,123.27 | | $164,442.39 |
| 8/8 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $30,000.00 | $134,442.39 |
| 8/11 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $60,000.00 | $74,442.39 |
| 8/15 | | INCOMING WIRE REF 20160815F2QCZ60C00268708151507FT03 ORG CLOSING AGENTS INC | $300,000.00 | | |
| 8/15 | | JUL PAPER STATEMENT FEE | | $3.00 | |
| 8/15 | | JUL INCOMING WIRE TRANSFER | | $30.00 | |
| 8/15 | | ONLINE BANKING TRANSFER TO ACCT *8249 | | $39,182.82 | |
| 8/15 | | ONLINE BANKING TRANSFER FR ACCT *8249 | $39,182.82 | | |
| 8/15 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $39,182.82 | $335,226.57 |
| 8/16 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $75,000.00 | $260,226.57 |
| 8/23 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $200,000.00 | $60,226.57 |
| 8/25 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $30,000.00 | |
| 8/25 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $25,000.00 | $5,226.57 |
| 8/26 | | INCOMING WIRE REF 20160826F2QCZ60C00339808261603FT03 ORG CLOSING AGENTS INC | $200,000.00 | | |

30488-74903-149806

Page 3 of 4
Primary Account ████ 2925
Beginning August 1, 2016 - Ending August 31, 2016                    31                **BBVA** Compass

| Date * | Check/ Serial # | Description | Deposits/ Credits | Withdrawals/ Debits | End of Day Balance |
|--------|-----------------|-------------|-------------------|---------------------|--------------------|
| 8/26 |  | ONLINE BANKING TRANSFER TO ACCT *2994 |  | $100,000.00 | $105,226.57 |
| Ending Balance on 8/31 |  |  |  |  | $105,226.57 |
| **Totals** |  |  | **$562,306.09** | **$663,398.64** |  |

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
* The Date provided is the business day that the transaction is processed.

30488-74904-149807

Page 2 of 3
Primary Account: ████2925
Beginning September 1, 2016 - Ending September 30, 2016                30

# CLEARCHOICE FOR BUSINESS

Account Number: ████2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Activity Summary

| | |
|---|---|
| Beginning Balance on 9/1/16 | $105,226.57 |
| Deposits/Credits (2) | + $600,000.00 |
| Withdrawals/Debits (8) | - $512,083.00 |
| Ending Balance on 9/30/16 | $193,143.57 |

## Transaction History

| Date * | Check/ Serial # | Description | Deposits/ Credits | Withdrawals/ Debits | End of Day Balance |
|---|---|---|---|---|---|
| 9/8 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $25,000.00 | $80,226.57 |
| 9/9 | | INCOMING WIRE REF 20160909F2QCZ60C00197609091323FT01 ORG CLOSING AGENTS INC | $300,000.00 | | |
| 9/9 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $200,000.00 | $180,226.57 |
| 9/15 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $50,000.00 | |
| 9/15 | | AUG PAPER STATEMENT FEE | | $3.00 | |
| 9/15 | | AUG INCOMING WIRE TRANSFER | | $30.00 | $130,193.57 |
| 9/16 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $115,000.00 | $15,193.57 |
| 9/26 | | INCOMING WIRE REF 20160926F2QCZ60C00258709261514FT03 ORG CLOSING AGENTS INC | $300,000.00 | | $315,193.57 |
| 9/27 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $32,000.00 | |
| 9/27 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $90,050.00 | $193,143.57 |
| Ending Balance on 9/30 | | | | | $193,143.57 |
| **Totals** | | | **$600,000.00** | **$512,083.00** | |

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
* The Date provided is the business day that the transaction is processed.

Page 2 of 4
Primary Account ███ 2925
Beginning October 1, 2016 - Ending October 31, 2016                    31



# CLEARCHOICE FOR BUSINESS

Account Number: ███ 2925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Account Information

We have updated the Treasury Management Service Agreement for the following product
sections: Account Reconciliation Services, Controlled Disbursement Services, Image Cash
Letter Services, Compass Remote Deposit Online, and Zero Balance Account Services.

Please review those sections of the Treasury Management Agreement online and print a
complete copy for your records. These terms and condition will become effective as of
January 1, 2017. A summary of those updates can be found on the second page of the
Treasury Management Agreement.  All other terms and conditions of the Treasury
Management Agreement will continue in full force and effect. You can find a current
version of the agreement by going to:
http://www.bbvacompass.com/commercial/treasury-management/resource-central/

The user ID is "treasury" and the password is "management."

## Activity Summary

| | |
|---|---|
| Beginning Balance on 10/1/16 | $193,143.57 |
| Deposits/Credits (3) | + $405,000.00 |
| Withdrawals/Debits (8) | - $570,033.00 |
| **Ending Balance on 10/31/16** | **$28,110.57** |

## Transaction History

| Date * | Check/ Serial # | Description | Deposits/ Credits | Withdrawals/ Debits | End of Day Balance |
|---|---|---|---|---|---|
| 10/7 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $25,000.00 | |
| 10/7 | | INCOMING WIRE REF 20161007F2QCZ60C00357410071631FT03 ORG CLOSING AGENTS INC | $300,000.00 | | |
| 10/7 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $270,000.00 | $198,143.57 |
| 10/11 | | ONLINE BANKING TRANSFER TO ACCT *8642 | | $70,000.00 | |
| 10/11 | | ONLINE BANKING TRANSFER FR ACCT *8642 | $70,000.00 | | |
| 10/11 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $70,000.00 | $128,143.57 |
| 10/17 | | SEP PAPER STATEMENT FEE | | $3.00 | |
| 10/17 | | SEP INCOMING WIRE TRANSFER | | $30.00 | $128,110.57 |
| 10/21 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $35,000.00 | |
| 10/21 | | ONLINE BANKING TRANSFER FR ACCT *0175 | $35,000.00 | | $128,110.57 |
| 10/27 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $100,000.00 | $28,110.57 |
| Ending Balance on 10/31 | | | | | $28,110.57 |
| **Totals** | | | **$405,000.00** | **$570,033.00** | |

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
* The Date provided is the business day that the transaction is processed.

258338-65088-130176

Page 2 of 3
Primary Account: 6720432925
Beginning December 1, 2016 - Ending December 31, 2016

31

# CLEARCHOICE FOR BUSINESS

Account Number: 6720432925 - BEN CLYMER'S THE BODY SHOP PERRIS, LLC

## Activity Summary

| | |
|---|---|
| Beginning Balance on 12/1/16 | $178,092.57 |
| Deposits/Credits (0) | + $0.00 |
| Withdrawals/Debits (4) | - $90,003.00 |
| Ending Balance on 12/31/16 | $88,089.57 |

## Transaction History

| Date * | Check/Serial # | Description | Deposits/Credits | Withdrawals/Debits | End of Day Balance |
|---|---|---|---|---|---|
| 12/6 | | ONLINE BANKING TRANSFER TO ACCT *8249 | | $10,000.00 | |
| 12/6 | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $50,000.00 | $118,092.57 |
| 12/9 . | | ONLINE BANKING TRANSFER TO ACCT *2994 | | $30,000.00 | $88,092.57 |
| 12/15 | | NOV PAPER STATEMENT FEE | | $3.00 | $88,089.57 |
| Ending Balance on 12/31 | | | | | $88,089.57 |
| **Totals** | | | $0.00 | $90,003.00 | |

Please note, certain fees and charges posted to your account may relate to services and/or activity from the prior statement cycle.
* The Date provided is the business day that the transaction is processed.

12512-27230-54460

## US BANK PERRIS LLC          6681

### START MAY 2017

| Date | Description | Amount | Deposit |
|---|---|---|---|
| | DEPOSIT CK # 8127 FROM ACC 2994 | | $ 50,000.00 |
| 6/26/2017 | DEPOSIT MARTIN AUTO COLOR | | $ 6,495.03 |
| | DEPOSIT MARTIN AUTO COLOR | | $ 6,627.25 |
| 6/13/2017 | DEPOSIT FROM 6590 US GEN. | | $ 9,417.53 |
| 6/28/2017 | DEPOSIT FROM US REBATE 8258 | | $ 20,000.00 |
| 7/26/2017 | DEPOSIT US GEN. | | $ 3,534.87 |
| | DEPOSIT US GEN. | | $ 2,887.44 |
| 7/28/2017 | DEPOSIT LOAN REPUBLIC FORD | | $ 11,413.73 |
| 7/10/2017 | DEPOSIT FROM REBATE 8258 | | $ 140,000.00 |
| 7/18/2017 | DEPOSIT FROM US BANK GEN 6590 | | $ 25,000.00 |
| 8/15/2017 | DEPOSIT FROM CHASE GEN. 2789 | | $ 28,000.00 |
| 8/21/2017 | DEPOSIT FROM US GEN. 6590 | | $ 43,198.58 |
| 8/7/2017 | TRANS FROM US REBATE 8258 | | $ 2,000.00 |
| 8/8/2017 | TRANS FROM US REBATE 8258 | | $ 11,000.00 |
| 8/15/2017 | TRANS FROM US GEN. 6590 | | $ 25,000.00 |
| 8/18/2017 | TRANS FROM US GEN. 6590 | | $ 14,000.00 |
| 9/1/2017 | DEPOSIT FROM US REBATE 8258 | | $ 5,000.00 |
| 9/6/2017 | TRANS FROM US GEN. 6590 | | $ 5,000.00 |
| 10/11/2017 | DEPOSIT FROM US REBATE 8258 | | $ 6,500.00 |
| 11/3/2017 | DEPOSIT FROM US PAYROLL 6608 | | $ 69,000.00 |
| 12/8/2017 | DEPOSIT FROM CHASE GEN 2789 CK 1121 | | $ 50,000.00 |
| 12/6/2017 | DEPOSIT FROM US PAYROLL 6608 | | $ 5,000.00 |
| 3/5/2020 | DEPOSIT FROM CHASE GEN 2789 | | $ 2,500.00 |
| | | | |
| | TRANS TO US BANK GEN 6590 | $ 100,000.00 | |
| 7/10/2017 | TRANS TO US BANK GEN 6590 | $ 140,000.00 | |
| 7/14/2017 | TRANS TO US BANK GEN 6590 | $ 25,000.00 | |
| 7/31/2017 | TRANS TO US REBATE 8258 | $ 11,413.73 | |
| 8/14/2017 | TRANS TO US GEN. 6590 | $ 25,000.00 | |
| 8/17/2017 | TRANS TO US GEN. 6590 | $ 14,000.00 | |
| 8/21/2017 | TRANS TO US GEN. 6590 | $ 43,198.58 | |
| 8/22/2017 | TRANS TO US PAYROLL 6608 | $ 5,000.00 | |
| 8/28/2017 | TRANS TO US GEN. 6590 | $ 35,000.00 | |

| Date | Check # | Description | Amount | | Amount |
|---|---|---|---|---|---|
| 11/3/2017 | | DEPOSIT TO US PAYROLL 6608 | $ 69,000.00 | | |
| 11/10/2017 | | TRANS TO US GEN 6590 | $ 100,000.00 | | |
| 11/16/2017 | | TRANS TO US PAYROLL 6608 | $ 20,000.00 | | |
| 11/17/2017 | | TRANS TO US PAYROLL 6608 | $ 43,000.00 | | |
| 8/1/2017 | 1002 | TIFFANY CHASE GEN 2789 | $ 175,000.00 | | |
| 11/1/2017 | 1003 | TIFFANY CHASE GEN 2789 | $ 55,000.00 | | |
| 11/3/2017 | 1004 | TIFFANY CHASE GEN 2789 | $ 150,000.00 | | |
| 11/15/2017 | 1005 | TIFFANY CHASE GEN 2789 | $ 50,000.00 | | |
| 11/17/2017 | 1006 | TIFFANY CHASE GEN 2789 | $ 50,000.00 | | |
| 11/20/2017 | 1007 | TIFFANY CHASE GEN 2789 | $ 45,000.00 | | |
| 11/22/2017 | 1010 | TIFFANY CHASE GEN 2789 | $ 60,000.00 | | |
| 11/22/2017 | 1011 | TIFFANY CHASE GEN 2789 | $ 40,000.00 | | |
| 12/1/2017 | | TRANS TO US PAYROLL 6608 | $ 65,000.00 | | |
| 4/1/2020 | | MARTIN AUTO COLOR | $ 37,000.00 | | |
| | | | | | |
| | | | $ 1,357,612.31 | | $ 541,574.43 |
| | | PERRIS INC. OWES PERRIS LLC | $ 816,037.88 | | |

 **usbank**

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

5839        TRN                                    Y        ST01

**Business Statement**

Account Number:
1 575 1384 6681

Statement Period:
May 26, 2017
through
May 31, 2017

Page 1 of 1



000151440 01 SP 0.460 106481053784391 P N
RANDOLPH B CLYMER
DBA BEN CLYMER'S THE BODY SHOP PERRIS LL
1645 MONTE MAR ST
CORONA CA 92881-8800

☎                                              *To Contact U.S. Bank*

**24-Hour Business**
*Solutions:*                                    1-800-673-3555

**U.S. Bank accepts Relay Calls**
*Internet:*                                         usbank.com

## NEWS FOR YOU

U.S. Bank has teamed up with ADP® to deliver payroll, tax processing plus people management for small businesses and startups. From hiring and handbooks to payroll and compliance, ADP brings unmatched depth and expertise to helping clients build a better workforce.

Act today and earn up to a $400 credit on your full-service payroll processing fees! Talk to a banker to find out more or visit www.usbank.com/adp.

Service is subject to normal credit approval. Eligibility requirements, other conditions and fees may apply. U.S. Bank and its representatives do not provide tax or legal advice. Contact your tax or legal advisor for advice and information concerning your particular situation. U.S. Bank is not affiliated with, is not responsible for and does not guarantee the products, services or performance of ADP or ADIP. Deposit products offered by U.S. Bank National Association. Member FDIC.

## INFORMATION YOU SHOULD KNOW

**Important changes are coming to your Online and Mobile Financial Services Agreement.** Review the changes being made by clicking on the banner on your My Accounts page in Online Banking to learn more.

## SILVER BUSINESS CHECKING                                                              *Member FDIC*

U.S. Bank National Association                                          **Account Number 1-575-1384-6681**

### Account Summary

|                              | # Items |    |            |
|------------------------------|---------|----|------------|
| Beginning Balance on May 26  |         | $  | 0.00       |
| Customer Deposits            | 1       |    | 50,000.00  |
| **Ending Balance on May 31, 2017** |   | **$** | **50,000.00** |

### Customer Deposits

| Number | Date   | Ref Number | Amount    |
|--------|--------|------------|-----------|
|        | May 26 | 9256300743 | 50,000.00 |

|                              |    |           |
|------------------------------|----|-----------|
| **Total Customer Deposits**  | $  | **50,000.00** |

### Balance Summary

| Date   | Ending Balance |
|--------|----------------|
| May 26 | 50,000.00      |

Balances only appear for days reflecting change.

 **bank**

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

5839    IMG                          Y        ST01

**Business Statement**

Account Number:
1 575 1384 6681
Statement Period:
Jun 1, 2017
through
Jun 30, 2017

Page 1 of 3

000052061 01 SP   106481100015819 E
RANDOLPH B CLYMER
DBA BEN CLYMER'S THE BODY SHOP
PERRIS LLC
1645 MONTE MAR ST
CORONA CA 92881-8800

☎                                    To Contact U.S. Bank

**24-Hour Business
Solutions:**                        1-800-673-3555

U.S. Bank accepts Relay Calls
Internet:                           usbank.com

---

## INFORMATION YOU SHOULD KNOW

Important changes are coming to your Online and Mobile Financial Services Agreement. Review the changes being made
by clicking on the banner on your My Accounts page in Online Banking to learn more.

---

## SILVER BUSINESS CHECKING

U.S. Bank National Association                                         *Member FDIC*
Account Summary                              Account Number 1-575-1384-6681

| | # Items | | |
|---|---|---|---|
| Beginning Balance on Jun 1 | | $ | 50,000.00 |
| Customer Deposits | 2 | | 103,122.28 |
| Other Deposits | 3 | | 79,417.53 |
| Other Withdrawals | 5 | | 228,346.54 - |
| **Ending Balance on Jun 30, 2017** | $ | | **4,193.27** |

### Customer Deposits

| Number | Date | Ref Number | Amount | Number | Date | Ref Number | Amount |
|---|---|---|---|---|---|---|---|
| | Jun 1 | 8956754777 | 90,000.00 | | Jun 26 | 8059509516 | 13,122.28 |
| | | | | **Total Customer Deposits** | | $ | **103,122.28** |

### Other Deposits

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Jun 13 | Internet Banking Transfer | From Account 157513846590 | | 9,417.53 |
| Jun 27 | Wire Credit REF001340 | COMERICA SAN JOSE 170627026779 | $ | 50,000.00 |
| | ORG=CLOSING AGENTS INC | 912 N HOLLYWOOD WAY | | |
| Jun 28 | Mobile Banking Transfer | From Account 157513268258 | | 20,000.00 |
| | | **Total Other Deposits** | $ | **79,417.53** |

### Other Withdrawals

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Jun 1 | Electronic Withdrawal | From DELUXE BUS SYS. | | 89.54 - |
| | REF=171510125261210Y00 | 1411877307BUS PRODS 80006687 | $ | |
| Jun 26 | Internet Banking Transfer | To Account 157513846590 | | 100,000.00 - |
| Jun 27 | Customer Withdrawal | | 8358640704 | 78,250.00 - |
| Jun 28 | Customer Withdrawal | | 8656067478 | 20,007.00 - |
| Jun 28 | Wire Debit REF002168 | EAST WEST BK PASAD 170628022251 | | 30,000.00 - |
| | BNF=AMERICAN PLUS | | | |
| | ESCROW | | | |
| | | **Total Other Withdrawals** | $ | **228,346.54 -** |

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|---|---|---|---|---|---|
| Jun 1 | 139,910.46 | Jun 26 | 62,450.27 | Jun 28 | 4,193.27 |
| Jun 13 | 149,327.99 | Jun 27 | 34,200.27 | | |

Balances only appear for days reflecting change.



Account Number:
1 575 1384 6681

Statement Period:
Jul 3, 2017
through
Jul 31, 2017

Page 1 of 3

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

5839     IMG                              Y      ST01

000051771 01 SP     106481143013885 E
RANDOLPH B CLYMER
DBA BEN CLYMER'S THE BODY SHOP
PERRIS LLC
1645 MONTE MAR ST
CORONA CA 92881-8800

**To Contact U.S. Bank**

**24-Hour Business
Solutions:**                    1-800-673-3555

**U.S. Bank accepts Relay Calls**

**Internet:**                   usbank.com

## INFORMATION YOU SHOULD KNOW

**Important changes are coming to your Online and Mobile Financial Services Agreement.** Review the changes being made by clicking on the banner on your My Accounts page in Online Banking to learn more.

**At U.S. Bank we are committed to doing our part to deter criminal activities related to money laundering.** We are enhancing our level of security on cash transactions in order to meet regulatory guidelines. To comply with these requirements, we need to clearly identify all individuals making cash transactions at our branches.

Beginning later this year we will require additional information from individuals who make cash transactions at the branch. Individuals who are not U.S. Bank accountholders will also be required to provide additional information, including individuals who present or receive cash on behalf of a business.

**What may be required for a cash transaction?**
This additional information includes: full name, address, date of birth, Taxpayer Identification Number (of the individual), occupation and photo identification (driver's license or government issued ID). Once the necessary information is established in our system, only photo identification will be required for subsequent cash transactions. Please be ready to provide this information when asked. For your convenience, our branches will be able to collect the additional information in advance of the requirement that becomes mandatory later this year. Thank you for your assistance.

## SILVER BUSINESS CHECKING

*Member FDIC*
**Account Number 1-575-1384-6681**

U.S. Bank National Association

### Account Summary

|  | # Items |  | |
|---|---|---|---|
| Beginning Balance on Jul 3 | | $ | 4,193.27 |
| Customer Deposits | 2 | | 17,836.04 |
| Other Deposits | 3 | | 215,000.00 |
| Other Withdrawals | 12 | | 234,950.32 - |
| **Ending Balance on Jul 31, 2017** | | **$** | **2,078.99** |

### Customer Deposits

| Number | Date | Ref Number | Amount | Number | Date | Ref Number | Amount |
|---|---|---|---|---|---|---|---|
| | Jul 26 | 8655974186 | 6,422.31 | | Jul 28 | 9256076504 | 11,413.73 |
| | | | | | **Total Customer Deposits** | **$** | **17,836.04** |

### Other Deposits

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| | | | $ | 140,000.00 |
| Jul 10 | Internet Banking Transfer | From Account 157513268258 | | 50,000.00 |
| Jul 12 | Wire Credit REF000837 | COMERICA SAN JOSE  170712020300 | | |
| | ORG=CLOSING AGENTS INC | 912 N HOLLYWOOD WAY | | 25,000.00 |
| Jul 18 | Internet Banking Transfer | From Account 157513846590 | | |
| | | **Total Other Deposits** | **$** | **215,000.00** |

### Other Withdrawals

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| | | | $ | 175.59 - |
| Jul 5 | Electronic Withdrawal | To SAN BERNARDINO | | |
| | REF=171840166605140N00 | 7956002748TAX COLL. 66275968142 | | 2,300.00 - |
| Jul 5 | Internet Banking Transfer | To Account 157513846673 | | |



**Business Statement**

Account Number:
1 575 1384 6681

Statement Period:
Aug 1, 2017
through
Aug 31, 2017

Page 1 of 3

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

5839      IMG                          Y      ST01



000004303 01 SP    106481188097016 E
RANDOLPH B CLYMER
DBA BEN CLYMER'S THE BODY SHOP
PERRIS LLC
1645 MONTE MAR ST
CORONA CA 92881-8800

☎                                  *To Contact U.S. Bank*

**24-Hour Business
Solutions:**                                    1-800-673-3555

**U.S. Bank accepts Relay Calls**

*Internet:*                                     usbank.com

---

## INFORMATION YOU SHOULD KNOW

**At U.S. Bank we are committed to doing our part to deter criminal activities related to money laundering.**
We are enhancing our level of security on cash transactions in order to meet regulatory guidelines. To comply with these
requirements, we need to clearly identify all individuals making cash transactions at our branches.

Beginning later this year we will require additional information from individuals who make cash transactions at the branch.
Individuals who are not U.S. Bank accountholders will also be required to provide additional information, including individuals who
present or receive cash on behalf of a business.

**What may be required for a cash transaction?**
This additional information includes: full name, address, date of birth, Taxpayer Identification Number (of the individual),
occupation and photo identification (driver's license or government issued ID). Once the necessary information is established in
our system, only photo identification will be required for subsequent cash transactions. Please be ready to provide this information
when asked. For your convenience, our branches will be able to collect the additional information in advance of the requirement
that becomes mandatory later this year. Thank you for your assistance.

**Important changes are coming to your Online and Mobile Financial Services Agreement.** Review the changes being made
by clicking on the banner on your My Accounts page in Online Banking to learn more.

---

## SILVER BUSINESS CHECKING                                    *Member FDIC*

U.S. Bank National Association                        **Account Number 1-575-1384-6681**

### Account Summary

|                                | # Items |    |            |
|--------------------------------|---------|----|------------|
| Beginning Balance on Aug 1     |         | $  | 2,078.99   |
| Customer Deposits              | 2       |    | 71,198.58  |
| Other Deposits                 | 5       |    | 127,826.49 |
| Other Withdrawals              | 12      |    | 177,218.58 - |
| Checks Paid                    | 2       |    | 15,000.00 - |
| **Ending Balance on Aug 31, 2017** | | $ | **8,885.48** |

### Customer Deposits

| Number | Date | Ref Number | Amount | Number | Date | Ref Number | Amount |
|--------|------|------------|--------|--------|------|------------|--------|
|        | Aug 15 | 8358866813 | 28,000.00 |     | Aug 21 | 8059778802 | 43,198.58 |
|        |      |            |        | **Total Customer Deposits** | | $ | **71,198.58** |

### Other Deposits

| Date | Description of Transaction | | Ref Number | | Amount |
|------|----------------------------|--|------------|--|--------|
| Aug 7 | Mobile Banking Transfer | From Account 157513268258 | | $ | 2,000.00 |
| Aug 8 | Internet Banking Transfer | From Account 157513268258 | | | 11,000.00 |
| Aug 9 | Wire Credit REF001000 | COMERICA SAN JOSE  170809023172 | | | 75,826.49 |
|       | ORG=CLOSING AGENTS INC | 912 N HOLLYWOOD WAY | | | |
| Aug 15 | Internet Banking Transfer | From Account 157513846590 | | | 25,000.00 |
| Aug 18 | Internet Banking Transfer | From Account 157513846590 | | | 14,000.00 |
|       |                            | **Total Other Deposits** | | $ | **127,826.49** |



**Business Statement**

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

5839      IMG           S           Y      ST01

Account Number:
1 575 1384 6681

Statement Period:
Sep 1, 2017
through
Sep 30, 2017

Page 1 of 3



000010099 01 SP      106481234217986 E
RANDOLPH B CLYMER
DBA BEN CLYMER'S THE BODY SHOP
PERRIS LLC
1645 MONTE MAR ST
CORONA CA 92881-8800

☎      **To Contact U.S. Bank**

**24-Hour Business
Solutions:**                      1-800-673-3555

**U.S. Bank accepts Relay Calls**
**Internet:**                              usbank.com

---

## INFORMATION YOU SHOULD KNOW

**At U.S. Bank we are committed to doing our part to deter criminal activities related to money laundering.**
We are enhancing our level of security on cash transactions in order to meet regulatory guidelines. To comply with these
requirements, we need to clearly identify all individuals making cash transactions at our branches.

Beginning later this year we will require additional information from individuals who make cash transactions at the branch.
Individuals who are not U.S. Bank accountholders will also be required to provide additional information, including individuals who
present or receive cash on behalf of a business.

**What may be required for a cash transaction?**
This additional information includes: full name, address, date of birth, Taxpayer Identification Number (of the individual),
occupation and photo identification (driver's license or government issued ID). Once the necessary information is established in
our system, only photo identification will be required for subsequent cash transactions. Please be ready to provide this information
when asked. For your convenience, our branches will be able to collect the additional information in advance of the requirement
that becomes mandatory later this year. Thank you for your assistance.

**Effective November 13, 2017,** the "Your Deposit Account Agreement" booklet includes a number of updates and may affect
your rights. As of Nov. 13, 2017 you may pick up copies at your local branch or view copies at usbank.com, or call 1-800-
USBANKS (1-800-872-2657) for a copy.  Please see the Additional Information Section of this statement for the main updates that
were made to "Your Deposit Account Agreement" booklet.

---

## SILVER BUSINESS CHECKING

U.S. Bank National Association

**Member FDIC**

**Account Number 1-575-1384-6681**

### Account Summary

|                               | # Items |    |             |
|-------------------------------|---------|----|-------------|
| Beginning Balance on Sep 1    |         | $  | 8,885.48    |
| Other Deposits                | 2       |    | 10,000.00   |
| Other Withdrawals             | 6       |    | 17,520.00 - |
| **Ending Balance on Sep 30, 2017** | | **$** | **1,365.48** |

### Other Deposits

| Date  | Description of Transaction |                              | Ref Number |    | Amount    |
|-------|----------------------------|------------------------------|------------|----|-----------|
| Sep 1 | Mobile Banking Transfer    | From Account 157513268258    |            | $  | 5,000.00  |
| Sep 6 | Mobile Banking Transfer    | From Account 157513846590    |            |    | 5,000.00  |
|       |                            | **Total Other Deposits**     |            | **$** | **10,000.00** |

### Other Withdrawals

| Date   | Description of Transaction |                            | Ref Number    |    | Amount      |
|--------|----------------------------|----------------------------|---------------|----|-------------|
| Sep 1  | Wire Debit REF005545       | TD BANK NA NEW YOR 170901055314 |          | $  | 2,500.00-   |
|        | BNF=PEABODY CHASE          | CONSULTING LLC.            |               |    |             |
| Sep 1  | Customer Withdrawal        |                            | 9257425543    |    | 5,000.00-   |
| Sep 6  | Mobile Banking Transfer    | To Account 157513846673    |               |    | 5,000.00-   |
| Sep 7  | Internet Banking Transfer  | To Account 157513846574    |               |    | 3,000.00-   |
| Sep 13 | Internet Banking Transfer  | To Account 157513846574    |               |    | 2,000.00-   |
| Sep 15 | Analysis Service Charge    |                            | 1500000000    |    | 20.00-      |
|        |                            | **Total Other Withdrawals** |              | **$** | **17,520.00-** |



# **U.S. bank**

**Business Statement**

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

| 5839 | IMG | S | Y | ST01 |

Account Number:
1 575 1384 6681

Statement Period:
Oct 2, 2017
through
Oct 31, 2017

Page 1 of 3

000004292 01 P    106481289871375 E
RANDOLPH B CLYMER
DBA BEN CLYMER'S THE BODY SHOP
PERRIS LLC
1645 MONTE MAR ST
CORONA CA 92881-8800

☎                                           *To Contact U.S. Bank*

*24-Hour Business
Solutions:*                                  1-800-673-3555

*U.S. Bank accepts Relay Calls
Internet:*                                   usbank.com

---

## INFORMATION YOU SHOULD KNOW

**Effective November 13, 2017,** the **"Your Deposit Account Agreement"** booklet includes a number of updates and may affect your rights. As of Nov. 13, 2017 you may pick up copies at your local branch or view copies at usbank.com, or call 1-800-USBANKS (1-800-872-2657) for a copy. Please see the Additional Information Section of this statement for the main updates that were made to **"Your Deposit Account Agreement"** booklet.

---

## SILVER BUSINESS CHECKING

U.S. Bank National Association                                            *Member FDIC*

### Account Summary                                  Account Number 1-575-1384-6681

|  | # Items |  |  |
|---|---|---|---|
| Beginning Balance on Oct 2 |  | $ | 1,365.48 |
| Other Deposits | 3 |  | 33,200.00 |
| Other Withdrawals | 3 |  | 26,741.00 - |
| Checks Paid | 1 |  | 6,500.00 - |
| **Ending Balance on Oct 31, 2017** | $ |  | **1,324.48** |

### Other Deposits

| Date | Description of Transaction |  | Ref Number |  | Amount |
|---|---|---|---|---|---|
| Oct  2 | Internet Banking Transfer | From Account 157513846574 |  | $ | 21,700.00 |
| Oct 11 | Mobile Banking Transfer | From Account 157513268258 |  |  | 6,500.00 |
| Oct 30 | Mobile Banking Transfer | From Account 157513846574 |  |  | 5,000.00 |
|  |  |  | **Total Other Deposits** | $ | **33,200.00** |

### Other Withdrawals

| Date | Description of Transaction |  | Ref Number |  | Amount |
|---|---|---|---|---|---|
| Oct  2 | Wire Debit REF004158 | COMERICA SAN JOSE  171002039177 |  | $ | 21,700.00 - |
|  | BNF=CLOSING AGENTS, INC. | ESCROW TRUST ACCOUNT |  |  |  |
| Oct 16 | Analysis Service Charge |  | 1600000000 |  | 41.00 - |
| Oct 30 | Customer Withdrawal |  | 8059282118 |  | 5,000.00 - |
|  |  |  | **Total Other Withdrawals** | $ | **26,741.00 -** |

### Checks Presented Conventionally

| Check | Date | Ref Number | Amount |
|---|---|---|---|
| 1001 | Oct 17 | 8356057971 | 6,500.00 |
|  |  | **Conventional Checks Paid (1)** | $  **6,500.00 -** |

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|---|---|---|---|---|---|
| Oct  2 | 1,365.48 | Oct 16 | 7,824.48 | Oct 30 | 1,324.48 |
| Oct 11 | 7,865.48 | Oct 17 | 1,324.48 |  |  |

Balances only appear for days reflecting change.

---

## ANALYSIS SERVICE CHARGE DETAIL

Account Analysis Activity for: September 2017



**Business Statement**

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

5839      IMG            S        Y       ST01

Account Number:
1 575 1384 6681
Statement Period:
Nov 1, 2017
through
Nov 30, 2017

Page 1 of 4

ուլլիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիիի
000004283 01 SP       106481336345715 E
RANDOLPH B CLYMER
DBA BEN CLYMER'S THE BODY SHOP
PERRIS LLC
1645 MONTE MAR ST
CORONA CA 92881-8800

☎                                      *To Contact U.S. Bank*

**24-Hour Business
Solutions:**                            *1-800-673-3555*

**U.S. Bank accepts Relay Calls
Internet:**                                usbank.com

## INFORMATION YOU SHOULD KNOW

**Changes effective now for cash transactions**

**At U.S. Bank we are committed to doing our part to deter criminal activities related to money laundering.** We are
enhancing our level of security on cash transactions in order to meet regulatory guidelines. To comply with these requirements,
we need to clearly identify all individuals making cash transactions at our branches.

Because of this requirement, we will require additional information from individuals who make cash transactions at the branch.
Individuals who are not U.S. Bank accountholders will also be required to provide additional information, including individuals who
present or receive cash on behalf of a business.

**What may be required for a cash transaction?** This additional information includes: full name, address, date of birth, Taxpayer
Identification Number (of the individual), occupation and photo identification (driver's license or government issued ID). Once the
necessary information is established in our system, only photo identification will be required for subsequent cash transactions.
Please be ready to provide this information when asked. More information on these changes is available at
www.usbank.com/cashtransactions. Thank you for your assistance.

**Price changes for U.S. Bank Business Checking, Savings and Treasury Management Services are effective Jan. 1, 2018.**
Please contact your Banker or Treasury Management Consultant for pricing information specific to your account. If you need
assistance in reaching your bank contact, call Customer Service at the number listed in the upper right corner of this statement or
send an email to Customer Service at commercialsupport@usbank.com.

## SILVER BUSINESS CHECKING

U.S. Bank National Association

**Member FDIC**

**Account Number 1-575-1384-6681**

### Account Summary

|                                   | # Items |    |              |
|-----------------------------------|---------|----|--------------|
| Beginning Balance on Nov 1        |         | $  | 1,324.48     |
| Customer Deposits                 | 1       |    | 69,000.00    |
| Other Deposits                    | 9       |    | 833,000.00   |
| Other Withdrawals                 | 9       |    | 261,041.00 - |
| Checks Paid                       | 8       |    | 625,000.00 - |
| **Ending Balance on Nov 30, 2017**| $       |    | **17,283.48**|

### Customer Deposits

| Number | Date  | Ref Number | Amount    |
|--------|-------|------------|-----------|
|        | Nov 3 | 9257041932 | 69,000.00 |

|                              |    |           |
|------------------------------|----|-----------|
| **Total Customer Deposits**  | $  | 69,000.00 |

### Other Deposits

| Date   | Description of Transaction | | Ref Number |    | Amount     |
|--------|----------------------------|--------------------------|-----------|----|-----------|
| Nov  1 | Internet Banking Transfer  | From Account 157510964073 |           | $  | 55,000.00  |
| Nov  1 | Internet Banking Transfer  | From Account 157510964073 |           |    | 175,000.00 |
| Nov  3 | Internet Banking Transfer  | From Account 157510964073 |           |    | 150,000.00 |
| Nov 10 | Internet Banking Transfer  | From Account 157510964073 |           |    | 100,000.00 |
| Nov 15 | Internet Banking Transfer  | From Account 157510964073 |           |    | 50,000.00  |
| Nov 16 | Internet Banking Transfer  | From Account 157510964073 |           |    | 20,000.00  |
| Nov 17 | Internet Banking Transfer  | From Account 157510964073 |           |    | 93,000.00  |

 **usbank.**

**Business Statement**

Account Number:
1 575 1384 6681

Statement Period:
Dec 1, 2017
through
Dec 31, 2017

Page 1 of 2

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

5839      IMG           S        Y       ST01



000214274 01 SP      106481377166108 E
RANDOLPH B CLYMER
DBA BEN CLYMER'S THE BODY SHOP
PERRIS LLC
1645 MONTE MAR ST
CORONA CA 92881-8800

☎                                    *To Contact U.S. Bank*

**24-Hour Business**
**Solutions:**                        *1-800-673-3555*

**U.S. Bank accepts Relay Calls**
**Internet:**                              *usbank.com*

---

## INFORMATION YOU SHOULD KNOW

### Changes effective now for cash transactions

**At U.S. Bank we are committed to doing our part to deter criminal activities related to money laundering.** We are enhancing our level of security on cash transactions in order to meet regulatory guidelines. To comply with these requirements, we need to clearly identify all individuals making cash transactions at our branches.

Because of this requirement, we will require additional information from individuals who make cash transactions at the branch. Individuals who are not U.S. Bank accountholders will also be required to provide additional information, including individuals who present or receive cash on behalf of a business.

**What may be required for a cash transaction?** This additional information includes: full name, address, date of birth, Taxpayer Identification Number (of the individual), occupation and photo identification (driver's license or government issued ID). Once the necessary information is established in our system, only photo identification will be required for subsequent cash transactions. Please be ready to provide this information when asked. More information on these changes is available at www.usbank.com/cashtransactions. Thank you for your assistance.

**Price changes for U.S. Bank Business Checking, Savings and Treasury Management Services are effective Jan. 1, 2018.** Please contact your Banker or Treasury Management Consultant for pricing information specific to your account. If you need assistance in reaching your bank contact, call Customer Service at the number listed in the upper right corner of this statement or send an email to Customer Service at commercialsupport@usbank.com.

Effective January 1st, 2018 the outgoing international branch wire fee will increase from $50.00 to $70.00. For any questions, please visit your local branch or call 800-673-3555.

Effective January 1st, 2018 the returned deposited (per item) fee will increase from $12.00 to $14.00 for business checking. For any questions, please visit your local branch or call 800-673-3555.

**Protecting your accounts is our highest priority.** We have many safeguards in place to help ensure your accounts are secure. One of these is to close long-term inactive cards. If your U.S. Bank Business Edge Debit or ATM Card has not been used within the last 18 months, it may be closed. You will be notified at a later date in the event that your card will be closed. Please call us with any questions at 800-673-3555.

---

## SILVER BUSINESS CHECKING                                                    *Member FDIC*

U.S. Bank National Association                          **Account Number 1-575-1384-6681**

### Account Summary

|                                   | # Items |    |            |
|-----------------------------------|---------|----|------------|
| Beginning Balance on Dec 1        |         | $  | 17,283.48  |
| Customer Deposits                 | 1       |    | 50,000.00  |
| Other Deposits                    | 2       |    | 70,000.00  |
| Other Withdrawals                 | 5       |    | 122,973.14 - |
| **Ending Balance on Dec 31, 2017** | **$**  |    | **14,310.34** |

### Customer Deposits

| Number | Date  | Ref Number  | Amount     |
|--------|-------|-------------|------------|
|        | Dec 8 | 9256691036  | 50,000.00  |

|                                       |     |              |
|---------------------------------------|-----|--------------|
| **Total Customer Deposits**           | $   | **50,000.00** |



**bank.**

DAVGEN CLYMER'S THE BODY SHOP
PERRIS LLC
1045 MONTE MAR ST
CORONA CA 92881-8800

**Business Statement**

Account Number:
1 575 1384 6681

Statement Period:
Dec 1, 2017
through
Dec 31, 2017

Page 2 of 2



## SILVER BUSINESS CHECKING

**(CONTINUED)**

U.S. Bank National Association

**Account Number 1-575-1384-6681**

### Other Deposits

| Date | Description of Transaction | | Ref Number | | Amount |
|------|---------------------------|---|-----------|---|--------|
| Dec 1 | Internet Banking Transfer | From Account 157510964073 | | $ | 65,000.00 |
| Dec 6 | Internet Banking Transfer | From Account 157513846608 | | | 5,000.00 |
| | | | **Total Other Deposits** | **$** | **70,000.00** |

### Other Withdrawals

| Date | Description of Transaction | | Ref Number | | Amount |
|------|---------------------------|---|-----------|---|--------|
| Dec 1 | Internet Banking Transfer | To Account 157513846608 | | $ | 65,000.00- |
| Dec 6 | Internet Banking Transfer | To Account 157513846673 | | | 5,000.00- |
| Dec 11 | Mobile Banking Transfer | To Account 157513846574 | | | 50,000.00- |
| Dec 13 | Internet Banking Transfer | To Account 157513846673 | | | 2,965.14- |
| Dec 14 | Analysis Service Charge | | 1400000000 | | 8.00- |
| | | | **Total Other Withdrawals** | **$** | **122,973.14-** |

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|------|---------------|------|---------------|------|---------------|
| Dec 1 | 17,283.48 | Dec 8 | 67,283.48 | Dec 13 | 14,318.34 |
| Dec 6 | 17,283.48 | Dec 11 | 17,283.48 | Dec 14 | 14,310.34 |

Balances only appear for days reflecting change.

## ANALYSIS SERVICE CHARGE DETAIL

Account Analysis Activity for: November 2017

| | | | |
|---|---|---|---|
| Account Number: | 1-575-1384-6681 | $ | 8.00 |
| Analysis Service Charge assessed to | 1-575-1384-6681 | $ | 8.00 |

### Service Activity Detail for Account Number 1-575-1384-6681

| Service | Volume | Avg Unit Price | Total Charge |
|---------|--------|---------------|--------------|
| **Depository Services** | | | |
| Combined Transactions/Items | 13 | | No Charge |
| Copy of Check/Deposit Ticket | 2 | | No Charge |
| Charge For Neg Coll Balance | 6,767.55 | | No Charge |
| Subtotal: Depository Services | | | 0.00 |
| **Branch Coin/Currency Services** | | | |
| Loose Currency Ordered/$100 | 50 | 0.16000 | 8.00 |
| Subtotal: Branch Coin/Currency Services | | | 8.00 |
| Fee Based Service Charges for Account Number 1-575-1384-6681 | | $ | 8.00 |



**U.S. bank.**

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

5839    IMG    Y    ST01

**Business Statement**

Account Number:
1 575 1384 6681

Statement Period:
Jun 1, 2017
through
Jun 30, 2017

Page 1 of 3

000052061 01 SP    106481100015819 E
RANDOLPH B CLYMER
DBA BEN CLYMER'S THE BODY SHOP
PERRIS LLC
1645 MONTE MAR ST
CORONA CA 92881-8800

☎                    *To Contact U.S. Bank*

**24-Hour Business
Solutions:**
                    1-800-673-3555

**U.S. Bank accepts Relay Calls**
**Internet:**
                    usbank.com

---

## INFORMATION YOU SHOULD KNOW

Important changes are coming to your Online and Mobile Financial Services Agreement. Review the changes being made by clicking on the banner on your My Accounts page in Online Banking to learn more.

---

## SILVER BUSINESS CHECKING

U.S. Bank National Association                    *Member FDIC*

**Account Summary**                    Account Number 1-575-1384-6681

|  | # Items |  |  |
|---|---|---|---|
| Beginning Balance on Jun 1 | | $ | 50,000.00 |
| Customer Deposits | 2 | | 103,122.28 |
| Other Deposits | 3 | | 79,417.53 |
| Other Withdrawals | 5 | | 228,346.54- |
| **Ending Balance on Jun 30, 2017** | | **$** | **4,193.27** |

### Customer Deposits

| Number | Date | Ref Number | Amount | Number | Date | Ref Number | Amount |
|---|---|---|---|---|---|---|---|
| | Jun 1 | 8956754777 | 90,000.00 | | Jun 26 | 8059509516 | 13,122.28 |
| | | | | **Total Customer Deposits** | | **$** | **103,122.28** |

### Other Deposits

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Jun 13 | Internet Banking Transfer | From Account 157513846590 | $ | 9,417.53 |
| Jun 27 | Wire Credit REF001340 | COMERICA SAN JOSE  170627026779 | | 50,000.00 |
| | ORG=CLOSING AGENTS INC | 912 N HOLLYWOOD WAY | | |
| Jun 28 | Mobile Banking Transfer | From Account 157513268258 | | 20,000.00 |
| | | **Total Other Deposits** | **$** | **79,417.53** |

### Other Withdrawals

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Jun 1 | Electronic Withdrawal | From DELUXE BUS SYS. | $ | 89.54- |
| | REF=171510125261210Y00 | 1411877307BUS PRODS 80006687 | | |
| Jun 26 | Internet Banking Transfer | To Account 157513846590 | | 100,000.00- |
| Jun 27 | Customer Withdrawal | | 8358640704 | 78,250.00- |
| Jun 28 | Customer Withdrawal | | 8656067478 | 20,007.00- |
| Jun 28 | Wire Debit REF002168 | EAST WEST BK PASAD  170628022251 | | 30,000.00- |
| | BNF=AMERICAN PLUS | | | |
| | ESCROW | | | |
| | | **Total Other Withdrawals** | **$** | **228,346.54-** |

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|---|---|---|---|---|---|
| Jun 1 | 139,910.46 | Jun 26 | 62,450.27 | Jun 28 | 4,193.27 |
| Jun 13 | 149,327.99 | Jun 27 | 34,200.27 | | |

Balances only appear for days reflecting change.



**Business Statement**

**USbank.**

F ...............
L ...BEN CLYMER'S THE BODY SHOP
PERRIS LLC
1645 MONTE MAR ST
CORONA CA  92881-8800

Account Number:
1 575 1384 6681

Statement Period:
Jul 3, 2017
through
Jul 31, 2017



Page 2 of 3

## SILVER BUSINESS CHECKING                                (CONTINUED)

U.S. Bank National Association

**Account Number 1-575-1384-6681**

### Other Withdrawals (continued)

| Date | Description of Transaction | | Ref Number | Amount |
|------|---------------------------|---|-----------|--------|
| Jul 10 | Internet Banking Transfer | To Account 157513846590 | | 140,000.00- |
| Jul 14 | Internet Banking Transfer | To Account 157513846590 | | 25,000.00- |
| Jul 17 | Analysis Service Charge | | 1700000000 | 61.00- |
| Jul 19 | Internet Banking Transfer | To Account 157513846574 | | 6,000.00- |
| Jul 21 | Mobile Banking Transfer | To Account 157513846574 | | 10,000.00- |
| Jul 21 | Customer Withdrawal | | 9256325211 | 20,000.00- |
| Jul 26 | Customer Withdrawal | | 8655735487 | 5,000.00- |
| Jul 26 | Customer Withdrawal | | 8655974156 | 5,000.00- |
| Jul 31 | Customer Withdrawal | | 8150136902 | 10,000.00- |
| Jul 31 | Internet Banking Transfer | To Account 157513268258 | | 11,413.73- |

|  | Total Other Withdrawals | $ | 234,950.32- |
|--|------------------------|---|-------------|

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|------|---------------|------|---------------|------|---------------|
| Jul 5 | 1,717.68 | Jul 17 | 26,656.68 | Jul 26 | 12,078.99 |
| Jul 10 | 1,717.68 | Jul 18 | 51,656.68 | Jul 28 | 23,492.72 |
| Jul 12 | 51,717.68 | Jul 19 | 45,656.68 | Jul 31 | 2,078.99 |
| Jul 14 | 26,717.68 | Jul 21 | 15,656.68 | | |

Balances only appear for days reflecting change.

## ANALYSIS SERVICE CHARGE DETAIL

Account Analysis Activity for: June 2017

| | | |
|--|--|--|
| Account Number: | 1-575-1384-6681 | $ 61.00 |
| Analysis Service Charge assessed to | 1-575-1384-6681 | $ 61.00 |

### Service Activity Detail for Account Number 1-575-1384-6681

| Service | Volume | Avg Unit Price | Total Charge |
|---------|--------|---------------|-------------|
| **Depository Services** | | | |
| Combined Transactions/Items | 12 | | No Charge |
| Subtotal: Depository Services | | | 0.00 |
| **Wire Transfers** | | | |
| Incoming Fedwire | 1 | 14.00000 | 14.00 |
| Bank- Fedwire Non-Repetitive | 1 | 35.00000 | 35.00 |
| Wire Advice Mail | 2 | 6.00000 | 12.00 |
| Subtotal: Wire Transfers | | | 61.00 |
| Fee Based Service Charges for Account Number 1-575-1384-6681 | | $ | 61.00 |



**U.S.bank.**

R/
DL EN CLYMER'S THE BODY SHOP
PERRIS LLC
1645 MONTE MAR ST
CORONA CA 92881-8800

**Business Statement**

Account Number:
1 575 1384 6681

Statement Period:
Aug 1, 2017
through
Aug 31, 2017

Page 2 of 3

## SILVER BUSINESS CHECKING    (CONTINUED)
U.S. Bank National Association    **Account Number 1-575-1384-6681**

### Other Withdrawals

| Date | Description of Transaction | | Ref Number | | Amount |
|---|---|---|---|---|---|
| Aug  7 | Mobile Banking Transfer | To Account 157513846673 | | $ | 2,000.00- |
| Aug  8 | Customer Withdrawal | | 8359146163 | | 4,000.00- |
| Aug  9 | Customer Withdrawal | | 8656590387 | | 8,000.00- |
| Aug 14 | Analysis Service Charge | | 1400000000 | | 20.00- |
| Aug 14 | Internet Banking Transfer | To Account 157513846590 | | | 25,000.00- |
| Aug 15 | Internet Banking Transfer | To Account 157513846574 | | | 28,000.00- |
| Aug 17 | Internet Banking Transfer | To Account 157513846590 | | | 14,000.00- |
| Aug 18 | Internet Banking Transfer | To Account 157513846574 | | | 3,000.00- |
| Aug 21 | Internet Banking Transfer | To Account 157513846590 | | | 43,198.58- |
| Aug 22 | Internet Banking Transfer | To Account 157513846608 | | | 5,000.00- |
| Aug 23 | Internet Banking Transfer | To Account 157513846574 | | | 10,000.00- |
| Aug 28 | Internet Banking Transfer | To Account 157513846590 | | | 35,000.00- |

| | | **Total Other Withdrawals** | $ | **177,218.58-** |
|---|---|---|---|---|

### Checks Presented Conventionally

| Check | Date | Ref Number | Amount | Check | Date | Ref Number | Amount |
|---|---|---|---|---|---|---|---|
| 0099 | Aug  9 | 8655079767 | 10,000.00 | 0103* | Aug 21 | 8057739203 | 5,000.00 |

* Gap in check sequence    **Conventional Checks Paid (2)**    $    **15,000.00-**

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|---|---|---|---|---|---|
| Aug  7 | 2,078.99 | Aug 15 | 66,885.48 | Aug 22 | 53,885.48 |
| Aug  8 | 9,078.99 | Aug 17 | 52,885.48 | Aug 23 | 43,885.48 |
| Aug  9 | 66,905.48 | Aug 18 | 63,885.48 | Aug 28 | 8,885.48 |
| Aug 14 | 41,885.48 | Aug 21 | 58,885.48 | | |

Balances only appear for days reflecting change.

## ANALYSIS SERVICE CHARGE DETAIL
Account Analysis Activity for: July 2017

| | | | |
|---|---|---|---|
| Account Number: | 1-575-1384-6681 | $ | 20.00 |
| Analysis Service Charge assessed to | 1-575-1384-6681 | $ | 20.00 |

### Service Activity Detail for Account Number 1-575-1384-6681

| Service | Volume | Avg Unit Price | Total Charge |
|---|---|---|---|
| **Depository Services** | | | |
| Combined Transactions/Items | 11 | | No Charge |
| Charge For Neg Coll Balance | 301.12 | | No Charge |
| Subtotal: Depository Services | | | 0.00 |
| **Wire Transfers** | | | |
| Incoming Fedwire | 1 | 14.00000 | 14.00 |
| Wire Advice Mail | 1 | 6.00000 | 6.00 |
| Subtotal: Wire Transfers | | | 20.00 |
| Fee Based Service Charges for Account Number 1-575-1384-6681 | | $ | 20.00 |

# **U.S. bank**

R/   JOSEPH BOLYMER
DE   J       R   PEABODY SHOP
PERRIS LLC
1045 MONTE MAR ST
CORONA CA  92881-8800



**Business Statement**

Account Number:
1 575 1384 6681

Statement Period:
Nov 1, 2017
through
Nov 30, 2017

Page 2 of 4

## SILVER BUSINESS CHECKING <span style="float:right">(CONTINUED)</span>

U.S. Bank National Association <span style="float:right">Account Number 1-575-1384-6681</span>

### Other Deposits (continued)

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Nov 20 | Internet Banking Transfer | From Account 157510964073 | | 90,000.00 |
| Nov 22 | Internet Banking Transfer | From Account 157510964073 | | 100,000.00 |
| | | **Total Other Deposits** | **$** | **833,000.00** |

### Other Withdrawals

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Nov 3 | Internet Banking Transfer | To Account 157513846608 | | $  69,000.00- |
| Nov 10 | Internet Banking Transfer | To Account 157513846590 | | 100,000.00- |
| Nov 14 | Analysis Service Charge | | 1400000000 | 41.00- |
| Nov 16 | Internet Banking Transfer | To Account 157513846608 | | 20,000.00- |
| Nov 17 | Internet Banking Transfer | To Account 157513846608 | | 43,000.00- |
| Nov 20 | Customer Withdrawal | | 8150292749 | 5,000.00- |
| Nov 22 | Customer Withdrawal | | 8656901419 | 10,000.00- |
| Nov 24 | Internet Banking Transfer | To Account 157513846673 | | 2,000.00- |
| Nov 27 | Internet Banking Transfer | To Account 157513846673 | | 12,000.00- |
| | | **Total Other Withdrawals** | **$** | **261,041.00-** |

### Checks Presented Conventionally

| Check | Date | Ref Number | Amount | Check | Date | Ref Number | Amount |
|---|---|---|---|---|---|---|---|
| 1002 | Nov 1 | 8653743685 | 175,000.00 | 1006 | Nov 17 | 9256195386 | 50,000.00 |
| 1003 | Nov 1 | 8655146252 | 55,000.00 | 1007 | Nov 20 | 8057929296 | 45,000.00 |
| 1004 | Nov 3 | 9255067556 | 150,000.00 | 1010* | Nov 22 | 8654892191 | 60,000.00 |
| 1005 | Nov 15 | 8654752301 | 50,000.00 | 1011 | Nov 22 | 8653832520 | 40,000.00 |

| * Gap in check sequence | **Conventional Checks Paid (8)** | **$** | **625,000.00-** |
|---|---|---|---|

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|---|---|---|---|---|---|
| Nov 1 | 1,324.48 | Nov 15 | 1,283.48 | Nov 22 | 31,283.48 |
| Nov 3 | 1,324.48 | Nov 16 | 1,283.48 | Nov 24 | 29,283.48 |
| Nov 10 | 1,324.48 | Nov 17 | 1,283.48 | Nov 27 | 17,283.48 |
| Nov 14 | 1,283.48 | Nov 20 | 41,283.48 | | |

Balances only appear for days reflecting change.

## ANALYSIS SERVICE CHARGE DETAIL

Account Analysis Activity for: October 2017

| | | | |
|---|---|---|---|
| Account Number: | 1-575-1384-6681 | $ | 41.00 |
| Analysis Service Charge assessed to | 1-575-1384-6681 | $ | 41.00 |

### Service Activity Detail for Account Number 1-575-1384-6681

| Service | Volume | Avg Unit Price | Total Charge |
|---|---|---|---|
| **Depository Services** | | | |
| Combined Transactions/Items | 3 | | No Charge |
| Subtotal: Depository Services | | | 0.00 |
| **Wire Transfers** | | | |
| Bank- Fedwire Non-Repetitive | 1 | 35.00000 | 35.00 |
| Wire Advice Mail | 1 | 6.00000 | 6.00 |
| Subtotal: Wire Transfers | | | 41.00 |
| Fee Based Service Charges for Account Number 1-575-1384-6681 | | $ | 41.00 |



**Business Statement**

Account Number:
1 575 1384 6681

Statement Period:
Nov 1, 2017
through
Nov 30, 2017

Page 2 of 4

R/   WEHLB CLYMER
DB____WORKMER'S THE BODY SHOP
PERRIS LLC
1045 MONTE MAR ST
CORONA CA  92881-8800



## SILVER BUSINESS CHECKING (CONTINUED)

U.S. Bank National Association

Account Number 1-575-1384-6681

### Other Deposits (continued)

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Nov 20 | Internet Banking Transfer | From Account 157510964073 | | 90,000.00 |
| Nov 22 | Internet Banking Transfer | From Account 157510964073 | | 100,000.00 |
| | | | **Total Other Deposits** | **$ 833,000.00** |

### Other Withdrawals

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Nov 3 | Internet Banking Transfer | To Account 157513846608 | | $ 69,000.00- |
| Nov 10 | Internet Banking Transfer | To Account 157513846590 | | 100,000.00- |
| Nov 14 | Analysis Service Charge | | 1400000000 | 41.00- |
| Nov 16 | Internet Banking Transfer | To Account 157513846608 | | 20,000.00- |
| Nov 17 | Internet Banking Transfer | To Account 157513846608 | | 43,000.00- |
| Nov 20 | Customer Withdrawal | | 8150292749 | 5,000.00- |
| Nov 22 | Customer Withdrawal | | 8656901419 | 10,000.00- |
| Nov 24 | Internet Banking Transfer | To Account 157513846673 | | 2,000.00- |
| Nov 27 | Internet Banking Transfer | To Account 157513846673 | | 12,000.00- |
| | | | **Total Other Withdrawals** | **$ 261,041.00-** |

### Checks Presented Conventionally

| Check | Date | Ref Number | Amount | Check | Date | Ref Number | Amount |
|---|---|---|---|---|---|---|---|
| 1002 | Nov 1 | 8653743685 | 175,000.00 | 1006 | Nov 17 | 9256195386 | 50,000.00 |
| 1003 | Nov 1 | 8655146252 | 55,000.00 | 1007 | Nov 20 | 8057929296 | 45,000.00 |
| 1004 | Nov 3 | 9255067556 | 150,000.00 | 1010* | Nov 22 | 8654892191 | 60,000.00 |
| 1005 | Nov 15 | 8654752301 | 50,000.00 | 1011 | Nov 22 | 8653832520 | 40,000.00 |

\* Gap in check sequence

**Conventional Checks Paid (8)**     **$ 625,000.00-**

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|---|---|---|---|---|---|
| Nov 1 | 1,324.48 | Nov 15 | 1,283.48 | Nov 22 | 31,283.48 |
| Nov 3 | 1,324.48 | Nov 16 | 1,283.48 | Nov 24 | 29,283.48 |
| Nov 10 | 1,324.48 | Nov 17 | 1,283.48 | Nov 27 | 17,283.48 |
| Nov 14 | 1,283.48 | Nov 20 | 41,283.48 | | |

Balances only appear for days reflecting change.

## ANALYSIS SERVICE CHARGE DETAIL

Account Analysis Activity for: October 2017

| | | | |
|---|---|---|---|
| Account Number: | 1-575-1384-6681 | $ | 41.00 |
| Analysis Service Charge assessed to | 1-575-1384-6681 | $ | 41.00 |

### Service Activity Detail for Account Number 1-575-1384-6681

| Service | Volume | Avg Unit Price | Total Charge |
|---|---|---|---|
| **Depository Services** | | | |
| Combined Transactions/Items | 3 | | No Charge |
| Subtotal: Depository Services | | | 0.00 |
| **Wire Transfers** | | | |
| Bank- Fedwire Non-Repetitive | 1 | 35.00000 | 35.00 |
| Wire Advice Mail | 1 | 6.00000 | 6.00 |
| Subtotal: Wire Transfers | | | 41.00 |
| Fee Based Service Charges for Account Number 1-575-1384-6681 | | $ | 41.00 |

# CHASE PERRIS LLC
## JUNE OPEN ACCOUNT   | 1296 |

| Date | Description | | Amount | | Balance | | |
|---|---|---|---|---|---|---|---|
| | STARTING DEPOSIT | | | $ | 100.00 | $ | 100.00 |
| 6/16/2017 | BEN WITHDRAWAL | $ | 75.00 | $ | 25.00 | | |
| | | | | | | | |
| | JULY | | | $ | 25.00 | | |
| | AUGUST | | | $ | 25.00 | | |
| 8/9/2017 | FEDWIRE CREDIT COMERICA BURBANK | | | $ | 75,851.49 | $ | 75,826.49 |
| 8/16/2017 | 134 DEPOSIT CHASE GEN 2789 HARTFORD | | | $ | 85,451.49 | $ | 9,600.00 |
| 8/21/2017 | DEPOSIT US GEN 6590 | | | $ | 107,451.49 | $ | 22,000.00 |
| | | | | $ | 107,451.49 | | |
| 8/15/2017 | TRANS TO CHASE GEN 2789 | $ | 28,000.00 | $ | 79,451.49 | | |
| 8/28/2017 | TRANS TO CHASE GEN 2789 | $ | 40,000.00 | $ | 39,451.49 | | |
| | | | | $ | 39,451.49 | | |
| 8/21/2017 | BEN WITHDRAWAL | $ | 15,000.00 | $ | 24,451.49 | | |
| | SEPTEMBER | | | $ | 24,451.49 | | |
| 9/14/2017 | DEPOSIT 8657 | | | $ | 34,451.49 | $ | 10,000.00 |
| 9/6/2017 | DEPOSIT FIRST REP BANK STABILIS FU | $ | 6,000.00 | $ | 28,451.49 | | |
| 9/15/2017 | DEPOSIT FIRST REP BANK STABILIS FU | $ | 10,000.00 | $ | 18,451.49 | | |
| | | | | $ | 18,451.49 | | |
| 9/1/2017 | BEN WITHDRAWAL | $ | 5,000.00 | $ | 13,451.49 | | |
| 9/6/2017 | BEN WITHDRAWAL | $ | 7,800.00 | $ | 5,651.49 | | |
| | OCTOBER | | | $ | 5,651.49 | | |
| | BANK CHARGE | $ | 95.00 | $ | 5,556.49 | | |
| | NOVEMBER | | | $ | 5,556.49 | | |
| 11/1/2017 | DEPOSIT FROM US 6681 | | | $ | 60,556.49 | $ | 55,000.00 |
| 11/20/2017 | DEPOSIT FROM US 6681 | | | $ | 105,556.49 | $ | 45,000.00 |
| 11/21/2017 | DEPOSIT LOAN PAYMENT JOSE MORENO | | | $ | 106,595.56 | $ | 1,039.07 |
| | | | | $ | 106,595.56 | | |
| 11/8/2017 | TRAN TO CHASE GEN 2789 | $ | 25,000.00 | $ | 81,595.56 | | |
| 11/9/2017 | TRAN TO BS RIVERSIDE 3068 | $ | 30,000.00 | $ | 51,595.56 | | |

| Date | Description | Debit | Balance | Credit |
|---|---|---|---|---|
| | | | $ 51,595.56 | |
| 11/21/2017 | BEN WITHDRAWAL | $ 30,000.00 | $ 21,595.56 | |
| 11/21/2017 | BEN WITHDRAWAL | $ 15,000.00 | $ 6,595.56 | |
| | BANK CHARGE | $ 95.00 | $ 6,500.56 | |
| | | | | |
| | **DECEMBER** | | $ 6,500.56 | |
| 12/18/2017 | BEVERLY HILLS | | $ 71,500.56 | $ 65,000.00 |
| 12/26/2017 | TRANS FROM CHASE GEN 2789 | | $ 80,500.56 | $ 9,000.00 |
| | | | $ 80,500.56 | |
| 12/19/2017 | TRANS TAMMY CLYMER | $ 15,000.00 | $ 65,500.56 | |
| 12/22/2017 | ROVERT CONSULTING INC. | $ 40,000.00 | $ 25,500.56 | |
| 12/26/2017 | BAY HILLS PARTNERS LLC | $ 25,000.00 | $ 500.56 | |
| | BANK CHARGE | $ 95.00 | $ 405.56 | |
| | | | | |
| | **JANUARY 2018** | | $ 405.56 | |
| | BANK CHARGE | $ 95.00 | $ 310.56 | |
| | | | | |
| | **FEBRUARY** | | $ 310.56 | |
| | DEPOSIT FIRST REPUBLIC BANK | | $ 13,845.37 | $ 13,534.81 |
| | BANK CHARGE | $ 95.00 | $ 13,750.37 | |
| | | | | |
| | **MARCH** | | $ 13,750.37 | |
| | BANK CHARGE | $ 95.00 | $ 13,655.37 | |
| | | | | |
| | **APRIL** | | $ 13,655.37 | |
| | BANK CREDIT | | $ 14,155.37 | $ 500.00 |
| | BANK CHARGE | $ 95.00 | $ 14,060.37 | |
| | | | | |
| | **JUNE** | | $ 14,060.37 | |
| | **TRANS TO CHASE GEN. 2789** | $ 10,000.00 | **$ 4,060.37** | |
| | | | | |
| | **JULY** | | $ 4,060.37 | |
| 7/6/2018 | TRANS TO ACC 3068 | $ 4,060.37 | **$0.00** | |
| | | | | |
| | **CLOSED ACCOUNT** | | | |

| JUNE OPEN ACCOUNT | 1296 | | |
|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 8/16/2017 | 134 DEPOSIT CHASE GEN 2789 HARTFORD | | | $ 9,600.00 |
| 8/21/2017 | DEPOSIT US GEN 6590 | | | $22,000.00 |
| 12/26/2017 | TRANS FROM CHASE GEN 2789 | | | $ 9,000.00 |
| 8/15/2017 | TRANS TO CHASE GEN 2789 | $ 28,000.00 | | |
| 8/28/2017 | TRANS TO CHASE GEN 2789 | $ 40,000.00 | | |
| 11/8/2017 | TRAN TO CHASE GEN 2789 | $ 25,000.00 | | |
| 6/27/2018 | TRANS TO CHASE GEN. 2789 | $ 10,000.00 | | |
| | | | | |
| | | $ 103,000.00 | | $ 40,600.00 |
| | PERRIS INC. OWES PERRIS LLC | $ 62,400.00 | | |

# CHASE ❖

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

August 01, 2017 through August 31, 2017

Account Number: ▮▮▮▮▮296



00041941 DRE 703 219 24417 NNNNNNNNNN  1 000000000 64 0000
BEN CLYMER'S THE BODY SHOP PERRIS LLC
12203 MAGNOLIA AVE
RIVERSIDE CA 92503-4889

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | www.Chase.com |
| Service Center: | 1-877-425-8100 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



## We updated our Deposit Account Agreement

On August 27, 2017, we published an updated version of our Deposit Account Agreement.

You can get the latest Deposit Account Agreement at chase.com/disclosures, at a branch or by request when you call us. Please review the Overdrafts section (General Account Terms, Section C) where we have added language to explain that we rely on transaction coding sent to us by the merchant or third party to determine whether a transaction is everyday or recurring.

Please call us at the number on this statement if you have any questions.

| CHECKING SUMMARY | Chase Platinum Business Checking |
|---|---|

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $25.00 |
| Deposits and Additions | 3 | 107,426.49 |
| Electronic Withdrawals | 2 | -68,000.00 |
| Other Withdrawals | 1 | -15,000.00 |
| **Ending Balance** | **6** | **$24,451.49** |

Your Chase Platinum Business Checking account provides:
- No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
- 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
- $25,000 in cash deposits per statement cycle
- Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account – please refer to your Deposit Account Agreement for more information.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 08/09 | Fedwire Credit Via: Comerica Bank/121137522 B/O: Closing Agents Inc Burbank, CA 91505 Ref: Chase Nyc/Ctr/Bnf=Ben Clymer's The Body Shop Perris Riverside, CA 9250 34889/Ac-000000009176 Rfb=15534169 Obi=Payoff Reg: 3100 Benedict Cyn D R. Imad: 0809L1Lf994C000999 Trn: 3883609221Ff | | $75,826.49 |
| 08/16 | Remote Online Deposit | 1 | 9,600.00 |
| 08/21 | Deposit          1656591667 | | 22,000.00 |
| **Total Deposits and Additions** | | | **$107,426.49** |



**CHASE** ◻

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754



December 01, 2017 through December 29, 2017
Account Number:                 1296

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | www.Chase.com |
| Service Center: | 1-877-425-8100 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00063108 DRE 703 219 36817 NNNNNNNNNNN  1 000000000 64 0000
BEN CLYMER'S THE BODY SHOP PERRIS LLC
12203 MAGNOLIA AVE
RIVERSIDE CA 92503-4889

---

## CHECKING SUMMARY    Chase Platinum Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $6,500.56 |
| Deposits and Additions | 2 | 74,000.00 |
| Electronic Withdrawals | 3 | -80,000.00 |
| Fees | 1 | -95.00 |
| Ending Balance | 6 | $405.56 |

Your Chase Platinum Business Checking account provides:
- No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
- 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
- $25,000 in cash deposits per statement cycle
- Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account – please refer to your Deposit Account Agreement for more information.

---

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/18 | Book Transfer Credit B/O: Alitsiya Design LLC Beverly Hills, CA 902123000 Tm: 3147600352Es | $65,000.00 |
| 12/26 | Online Transfer From Chk ...2789 Transaction#: 6773711275 | 9,000.00 |
| **Total Deposits and Additions** | | **$74,000.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/19 | 12/19 Domestic Wire Transfer Via: F121000358/121000358 A/C: Tammy Clymer Ref./Time/12:53 Imad: 1219B1Qgc08C012288 Trn: 4693900353Es | $15,000.00 |
| 12/22 | 12/22 Domestic Wire Transfer Via: Banner Bk Woodnvil/125108191 A/C: Rovert Consulting Inc. Imad: 1222B1Qgc02C006445 Tm: 5341700356Es | 40,000.00 |
| 12/26 | 12/26 Domestic Wire Transfer Via: Wells Fargo NA/121000248 A/C: Bay Hill Partners LLC Ref./Time/16:32 Imad: 1226B1Qgc06C010738 Tm: 5835600360Es | 25,000.00 |
| **Total Electronic Withdrawals** | | **$80,000.00** |

# CHASE ◯

August 01, 2017 through August 31, 2017

Account Number: ████████296

# ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 08/15 | 08/15 Online Transfer To Chk ...2789 Transaction#: 6445272069 | $28,000.00 |
| 08/28 | 08/28 Online Transfer To Chk ...2789 Transaction#: 6475009189 | 40,000.00 |
| **Total Electronic Withdrawals** | | **$68,000.00** |

# OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 08/21 | 08/21 Withdrawal | $15,000.00 |
| **Total Other Withdrawals** | | **$15,000.00** |

# DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 08/09 | $75,851.49 |
| 08/15 | 47,851.49 |
| 08/16 | 57,451.49 |
| 08/21 | 64,451.49 |
| 08/28 | 24,451.49 |

# SERVICE CHARGE SUMMARY

| | |
|---|---|
| Monthly Service Fee | $0.00 |
| Other Service Charges | $0.00 |
| **Total Service Charges** | **$0.00** |

# SERVICE CHARGE DETAIL

| DESCRIPTION | VOLUME | ALLOWED | CHARGED | PRICE/ UNIT | TOTAL |
|-------------|--------|---------|---------|-------------|-------|
| **Other Service Charges:** | | | | | |
| **Electronic Credits** | | | | | |
| Electronic Items Deposited | 1 | Unlimited | 0 | $0.40 | $0.00 |
| Electronic Credits | 1 | Unlimited | 0 | $0.40 | $0.00 |
| **Credits** | | | | | |
| Non-Electronic Transactions | 3 | 500 | 0 | $0.40 | $0.00 |
| **Electronic Credits** | | | | | |
| Domestic Incoming Wire Fee | 1 | Unlimited | 0 | $15.00 | $0.00 |
| **Subtotal Other Service Charges** | | | | | **$0.00** |

ACCOUNT 000000917651296

| | |
|---|---|
| **Other Service Charges:** | |
| **Electronic Credits** | |
| Electronic Items Deposited | 1 |
| Electronic Credits | 1 |
| **Credits** | |
| Non-Electronic Transactions | 3 |
| **Electronic Credits** | |
| Domestic Incoming Wire Fee | 1 |

CHASE 

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

November 01, 2017 through November 30, 2017

Account Number: ▮▮▮1296

00062037 DRE 703 219 33517 NNNNNNNNNNN  1 000000000 64 0000
BEN CLYMER'S THE BODY SHOP PERRIS LLC
12203 MAGNOLIA AVE
RIVERSIDE CA 92503-4889

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | www.Chase.com |
| Service Center: | 1-877-425-8100 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



## CHECKING SUMMARY   Chase Platinum Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $5,556.49 |
| Deposits and Additions | 3 | 101,039.07 |
| Electronic Withdrawals | 2 | -55,000.00 |
| Other Withdrawals | 2 | -45,000.00 |
| Fees | 1 | -95.00 |
| Ending Balance | 8 | $6,500.56 |

Your Chase Platinum Business Checking account provides:
- No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
- 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
- $25,000 in cash deposits per statement cycle
- Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account – please refer to your Deposit Account
Agreement for more information.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 11/01 | Remote Online Deposit | 1 | $55,000.00 |
| 11/20 | Deposit      942412299 | | 45,000.00 |
| 11/21 | Remote Online Deposit | 1 | 1,039.07 |
| **Total Deposits and Additions** | | | **$101,039.07** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/08 | 11/08 Online Transfer To Chk ...2789 Transaction#: 6654808629 | $25,000.00 |
| 11/09 | Transfer To Chk Xxxxxx3068 | 30,000.00 |
| **Total Electronic Withdrawals** | | **$55,000.00** |



**CHASE**

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

June 01, 2018 through June 29, 2018

Account Number:               1296



## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | www.Chase.com |
| Service Center: | 1-877-425-8100 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00102725 DRE 703 219 18 118 NNNNNNNNNNN  1 000000000 64 0000
BEN CLYMER'S THE BODY SHOP PERRIS LLC
12203 MAGNOLIA AVE
RIVERSIDE CA 92503-4889

---

## CHECKING SUMMARY   Chase Total Business Checking

| | INSTANCES | AMOUNT | |
|---|---|---|---|
| Beginning Balance | | $14,060.37 | |
| Electronic Withdrawals | 1 | -10,000.00 | |
| Ending Balance | 1 | $4,060.37 | *Posted* |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/27 | 06/27 Online Transfer To Chk ...2789 Transaction#: 7264552164 | $10,000.00 |
| | **Total Electronic Withdrawals** | **$10,000.00** |

The monthly service fee of $12.00 was waived this period because you maintained a minimum daily balance of $1,500.00 or more.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 06/27 | $4,060.37 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 0 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **0** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $12.00 |
| Service Fee Credit | -$12.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 100) | $0.00 |
| **Total Service Fees** | **$0.00** |

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 18345 Ventura Blvd., Suite No. 518, Tarzana, CA 91356.

**A TRUE AND CORRECT COPY OF THE FOREGOING DOCUMENT ENTITLED (*SPECIFY*):**

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY; DECLARATIONS IN SUPPORT THEREOF**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 21, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) October 21, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| October 21, 2020 | Catherine Jung | */s/ Catherine Jung* |
| *Date* | *Printed Name* | *Signature* |

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) – CONTINUED**

James E Adler on behalf of Creditor Courtesy NEF
*james@parkandlim.com, david@parkandlim.com; heesok@parkandlim.com*

James E Adler on behalf of Creditor US Metro Bank
*james@parkandlim.com, david@parkandlim.com; heesok@parkandlim.com*

Adam N Barasch on behalf of Creditor Ford Motor Credit Company, LLC
*anb@severson.com, cas@severson.com, nye@severson.com*

Donald H Cram, III on behalf of Creditor Ford Motor Credit Company, LLC
*dhc@severson.com, cas@severson.com*

Fahim Farivar on behalf of Creditor Courtesy NEF
*fahim@farivarlaw.com, catherine@farivarlaw.com;lisa@farivarlaw.com*

Abram Feuerstein, esq on behalf of U.S. Trustee United States Trustee (RS)
*abram.s.feuerstein@usdoj.gov*

Todd A Frealy on behalf of Creditor Courtesy NEF
*taf@lnbrb.com*

Todd A. Frealy (TR)
*taftrustee@lnbyb.com, taf@trustesolutions.net*

Duane M Geck on behalf of Creditor Ford Motor Credit Company, LLC
*dmg@severson.com, pag@severson.com*

Everett L Green on behalf of U.S. Trustee United States Trustee (RS)
*everett.l.green@usdoj.gov*

Vida Halavi on behalf of Interested Party Prime Lending, LLC
*vhalavi@gmail.com*

William E Ireland on behalf of Creditor JPMorgan Chase
*wireland@hbblaw.com, cdraper@hbblaw.com*

Jacqueline L James on behalf of Creditor First Home Bank
*jjames@hrhlaw.com*

Monica Y Kim on behalf of Trustee Todd A. Frealy (TR)
*myk@lnbrb.com, myk@ecf.inforuptcy.com*

Cameron C Ridley on behalf of U.S. Trustee United States Trustee (RS)
*Cameron.Ridley@usdoj.gov*

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

United States Trustee (RS)
*ustpregion16.rs.ecf@usdoj.gov*

Victor A Vilaplana on behalf of Creditor The Around the Clock Freightliner Group, LLC d/b/a Premier Truck Group
*vavilaplana@foley.com, rhurst@foley.com*

Robert M Yaspan on behalf of Debtor Ben Clymer's The Body Shop Perris Inc.
*court@yaspanlaw.com, tmenachian@yaspanlaw.com*

**BEN CLYMER'S THE BODY SHOP PERRIS, LLC'S AMENDED NOTICE OF MOTION AND MOTION TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR POST-PETITION LEASE PAYMENTS, OR, IN THE ALTERNATIVE, MOTION TO LIFT AUTOMATIC STAY**

20 Largest

***Debtor***
**Ben Clymer's The Body Shop
Perris Inc.**
12203 Magnolia Ave
Riverside, CA 92503

**Robert M Yaspan**
Law Offices of Robert M Yaspan
21700 Oxnard St Ste 1750
Woodland Hills, CA 91367

Azo Car Audio
2915 Buckingham Rd
Los Angeles, CA 90016

BOBIT Business Media
3520 Challenger St
P.O. Box 2703
Torrance, CA 90503

FMS Seating
7346 W 400 N Rochester
Rochester, IN 46975

ICWGroup Insurance
Companies PO Box 509039
San Diego, CA 92150

Fred Beans Ford
1939 Lincoln Highway
Langhorne, PA 19047

Hadley
2851 Prarie SW
Grandville, MI 49418

Lipper Components
3501 E. CR 6
Elkhart, **IN** 46514

Leo's Upholstery Supplies
10925 Fawcett Ave.
Riverside, CA 92503

Lindsey & Hall
940 **N.** Durfee Ave
Unit B
South El Monte, CA 91733

Modern Composits
235 North Hermosa Ave. Colton,
CA 92324

Maney Wire & Cable
3959 Guasti Rd. Ste E
Ontario, CA 91761

MetalCo Steel & Supply
PO Box 4074
Palm Desert, CA 92261

State Board of Equalization
Account Information
Group, MIC: 29
P.O. Box 942879
Sacramento, CA 94279

Reliance Steel Company
2537 E. 27th Street
Los Angeles, CA 90058

Riverside County Treasurer
P.O. Box 12005
Riverside, CA 92502

Weber Plywood
15501 Mosher Ave
Tustin, CA 92780

Superior Interior Systems
6724 Pine Ridge Court
Jenison, MI 49428

the Hartford
P.O. Box 660916
Dallas, TX 75266

Worldwide Express
PO Box 101903
Pasadena, CA 91189